THE PEOPLE EX REL. FREDERICK S. AYRES, JAMES S. AYRES
AND EBENEZER R. AYRES v. BENNETT RICHARDS,
HIGHWAY COMMISSIONER OF THE TOWN-
SHIP OF PORT AUSTIN.

*Condemnation of land for private ways.*

Ten days' notice must be given before proceedings can be had to
condemn land for a private way.

Property cannot be condemned for a private way as a mere conven-
ience, but only when there is no other access to the petitioner's
land, and when condemned, its use must be limited by absolute
necessity and confined to the petitioner and the owner.

Comp. L., ch. 31, for laying out private ways, is defective in not
providing for juries.

A commissioner of highways has no authority to determine the facts
contained in his return; they must be shown to have been proven
before a jury.

CERTIORARI to a highway commissioner. Submitted
January 11. Decided January 22. The facts are in the
opinion.

*Jas. H. Hall* and *Atkinson & Atkinson* for plaintiffs
in certiorari.

*Winsor & Snover* and *H. B. Carpenter* for defendant
in certiorari.

CAMPBELL, C. J. This is a certiorari to review the pro-
ceedings had to lay out an alleged private road over the
property of the relators. Various objections are made,
and reference will be had to such as are important.

Relators owned and occupied certain premises in the
township of Port Austin. On the 13th of April, 1877,
Thomas Winsor and Philip Winsor presented to respond-
ent as highway commissioner an unsworn petition request-
ing him to lay out a private road as therein designated.
The application contained no averment of its necessity

and no statement of facts indicating any reason why the applicants desired or needed it.

On that day, which was Friday, the commissioner served notice upon Frederick and James Ayres (Ebenezer being in Ohio) that on Monday morning (the 16th), at ten o'clock, they should attend at his office for the purpose of striking a jury to determine as to the "necessity or propriety" of such road.

At the time and place appointed, the commissioner designated the sheriff as a disinterested person to write down the names of eighteen disinterested freeholders. James S. Ayres was present at the hour appointed, but left and returned in about an hour and a half. The sheriff made out a list and after waiting about an hour, the applicants were allowed to strike off three names, and the commissioner struck off three for the land owners. The jurors were sworn to examine into the "necessity and propriety" of the proposed road, and in case of a decision that the road was necessary, to appraise the damages.

When the jury had appeared, and before they were sworn, relators appeared by attorney and made objections and asked to have a new jury, which was refused. He asked an adjournment or to have the proceedings stand open, which was also refused.

The jury, as appears from the return, proceeded to view the premises. It does not appear distinctly that any legal evidence was before the jury. Upon this the return—though perhaps not intentionally—is evasive, as the question was distinctly raised by the petition; it states simply that such evidence as was offered was received. The commissioner himself makes return of some facts, which are not stated to have been proven before the jury, and which he of course has no authority to determine. But such as they are they show the manifest impropriety of some of the transactions and partially corroborate the complaints of relators. The only reasons which he mentions as existing for the road are

that it is important as a means of access to a village
plat.   It appears also that at the time of these proceed-
ings the proposed road ran over a grave yard, which is
unlawful (Comp. L., § 7713).   The return says that "the
evidence of any graves over the line of the road applied
for was about obliterated.   But the applicant had obtained
permission from the friends and relatives of the deceased
to remove the three graves referred to, and did so remove
to the new township grave yard."   This finding of per-
mission and subsequent removal is not one which can
be proved by the commissioner's statement, but it shows
plainly enough that at the time of the action of the jury
they depended on the promise of the applicants, and
that there was then a grave yard on the premises.

It appears to be imagined by the parties interested
that the laying out of a private road is not a matter of
much consequence, and is merely a matter of conven-
ience.   The peculiar statute under which the action was
taken (chapter 31 of the Compiled Laws) was evidently
framed on that notion, and uses the terms *necessity* and
*propriety* as substantially synonymous, and so is the form
of the juror's oath.

It is hardly needful for us to say that nothing but a
clear practical necessity can, under our constitution, jus-
tify the taking of private property of one person to be
used as a private road by another.   It is not to be
taken for mere convenience.   The taking is only justi-
fiable where no other way of access to the lands of the
applicant can be found.   And both constitution and
statute require that its use shall be only commensurate
with the necessity of the applicants, and confined to
them and the owner.   It is absurd to speak of any such
private necessity to get access to a village plat, to accom-
modate lot-owners.

We have referred to these matters to correct a mis-
apprehension which has apparently led to annoying if
not oppressive measures dictated by no necessity.

But the case is one which as it stands, indicates still more plain violations of law. The statute in question does not provide any particular time of notice of these proceedings. If it is possible (which we do not decide) to maintain such a law at all, it can only be by assuming that the time of notice is to be governed by the analogies of similar cases. Notices under the highway laws are notices of ten days. Such a notice as the present is no notice whatever for any valuable purpose. Notice on Friday that summary and final proceedings will be had on Monday to divest the title to lands is entirely inadequate and unreasonable. It gives no time for the summoning of witnesses or for such examination and legal counsel as are necessary to enable the parties to defend their rights. The indecent haste and arbitrary course shown by the return itself exemplify the mischief as plainly as any imaginary example could.

In 1861, the Legislature, probably regarding the existing law as open to abuse or misconstruction, attempted to put the laying out of private roads and highways on the same footing, so far as practicable. Sess. L., 1861, p. 256 -8. That law is defective in not providing for juries,— which the constitution renders indispensable in cases of private roads. Const., Art. XVIII., § 14. There may be some difficulty in maintaining it as an entire substitute for the old law, and possibly it may not be so drawn as to supply the defects of the former statute, which are certainly of a very grave character. But we are entirely satisfied that if any discretion can be given to the commissioner to fix a minimum time of notice, it cannot be any less notice than that which the laws have prescribed for all similar proceedings, and that such a notice as was given here is illusory and legally insufficient. See McCaslin v. Camp, 26 Mich., 390.

Where proceedings are to be had in courts, they can usually provide adequately for matters of practice so as to prevent injustice; yet even there it is not common

to leave to such tribunals entire control of the time of notice in special proceedings of a ᵣₐₒrdinary character. Where such proceedings are had before officers not having any judicial powers, it would be extremely dangerous to allow them to fix the conditions of their own jurisdiction. This would deprive parties of any adequate safeguard against the arbitrary destruction of their vested rights. Unless a notice can be saved by bringing it within some known legal analogy, it is impossible to hold it sufficient to confer jurisdiction. Assuming that such a conformity might save it,—which we certainly are not prepared to affirm without further consideration,—the notice before us cannot possibly be upheld on any principle of reason or justice.

The proceedings must be quashed.

The other Justices concurred.