DANIELS v. LONG.

1. MUNICIPAL CORPORATIONS—BONDS—INJUNCTION—WHEN A BAR
TO SUBSEQUENT PROCEEDINGS.
  A suit in chancery to enjoin the issuance of bonds by a
  village in accordance with a vote of the electors, and the
  granting therein of a preliminary injunction, do not con-
  stitute a bar to a proceeding by *mandamus* to compel the
  village authorities to sign bonds voted at an election subse-
  quently held, where it does not appear but that the injunc-
  tion was granted because of some mere irregularity in the
  first election.

2. SAME—VALIDITY OF ELECTION—TWO-THIRDS VOTE.
  Under a statute requiring that a proposition to borrow
  money must have the approval of "two-thirds of the elec-
  tors voting" at a general election, or at a special election
  called for that purpose, an affirmative vote equal to two-
  thirds of the whole number voting at the election, and not
  merely a two-thirds vote of those voting upon the particular
  proposition, is necessary to authorize the loan. *Stebbins* v.
  *Judge of Superior Court*, 108 Mich. 693, followed.

3. SAME—IMPROVEMENT CONTRACT—ESTOPPEL.
  The president and inhabitants of a village are not estopped
  to dispute the liability of the village on contracts for the
  erection of an electric-light plant and waterworks by allow-
  ing the work to be done, where the contractors, before mak-
  ing the contracts, had notice that the propositions for entering
  into such contracts had not been legally carried.

4. SAME—ISSUANCE OF BONDS—MANDAMUS—DEFENSES.
  In *mandamus* proceedings against a municipal officer to com-
  pel the execution of certain bonds of the municipality, the
  respondent may set up the illegality of the election by which
  the issuance of such bonds was provided for.

*Certiorari* to Kalamazoo; Buck, J. Submitted Janu-
ary 5, 1897. Decided February 2, 1897.

*Mandamus* by Henry J. Daniels and others, trustees
of the village of Vicksburg, against John Long, presi-

dent of said village, to compel the signing of certain
bonds voted for improvement purposes.   From an order
granting the writ on demurrer to the answer, respondent
brings *certiorari*.   Reversed.

*Howard, Roos & Howard*, for relators.

*N. H. Stewart*, for respondent.

HOOKER, J.   The circuit court, upon application of sev-
eral trustees of the village of Vicksburg, issued a peremp-
tory *mandamus* against John Long, president of said
village, to compel the signing of certain bonds voted for
the purpose of raising the necessary funds to provide a
municipal electric-light plant and waterworks.   It is
before us upon *certiorari*.

The case was heard below upon relators' demurrer to
the answer of the respondent; hence the only question
before us is whether the answer states a *prima facie*
defense.   The first ground alleged is that the respondent
had been enjoined.   The record discloses that an election
was held on the 27th of April, 1896, and that the issue of
bonds was enjoined by the circuit court in a suit brought
by one Dell to declare the election invalid.   Subsequently
the council undertook to abandon those proceedings, and
called another election, at which, it is said, the projects
were declared to be carried.   Upon the refusal of respond-
ent to sign the bonds, this proceeding was instituted.   He
alleges, in his answer, that the meeting at which the
second election was called was irregular and invalid, and
contrary to law; but he does not set forth in what particu-
lar it was invalid, except that, by reason of the pendency
of the former suit, he alleges that it was irregular to
call a second election, in view of the fact that the council
was enjoined from taking any proceedings to bond the
village in the amount of $12,000 for waterworks and
$3,500 for an electric-light plant, and that the election
was, therefore, void.   The answer denies the accuracy of

the petition in its statement of the vote for and against the propositions, and states that the poll list shows that 307 votes were cast, and that 9 of those which were cast for said projects were illegal. As a further answer the respondent alleges that it was the avowed purpose—presumably of relators—to unlawfully hypothecate said bonds, or some of them, for a loan of $1,300, at 8 per cent. interest, notwithstanding the fact that the condition of the resolution ordering said bonds was that they should be sold at par, and not draw over 5 per cent. interest; and, further, that, at the meeting at which it was determined to do this, a quorum of the council was not present, without counting the president *pro tempore,* and that he fears that said bonds will be unlawfully disposed of if he signs them. We may therefore resolve the case into the following questions:

1. Was the chancery suit a legal obstacle to a second election?

2. Does the record disclose that less than two-thirds of those voting upon these propositions voted in favor of them?

3. Was respondent's belief in the failure of the projects, or in the avowed intention of the relators to hypothecate the bonds as collateral security for a loan at a rate of interest higher than that authorized, a sufficient justification for the respondent's refusal to sign the bonds?

The answer does not show the grounds upon which the Dell suit was planted. If it appeared that it was based upon a foundation broad enough, and called for a decree forbidding the issue of any bonds because of the amount being in excess of the power of the council, we might be justified in saying that a discretionary writ should not issue, though we reserve the question; but it may be that it attacks the proceeding because of some irregularity, and that the council, recognizing or fearing invalidity, has chosen to save time and money by submitting the question again. If there was no impropriety in this, and we cannot say, from this record, that there was, the

former suit does not preclude the issue of bonds upon a new election.

The answer alleges that the poll list shows that 307 votes were cast at such election. It does not state how many of these were cast upon each proposition, and, as it is possible, and perhaps not improbable, that some electors voted upon but one of the propositions, the statement in the answer is not inconsistent with the declaration of the inspectors, viz., that 298 votes were cast upon the proposition for waterworks, of which 205 were for, and 93 against, the proposition, and that 290 votes were cast upon the proposition for electric lighting, of which 197 were for, and 93 were against, such proposition. If the 9 alleged illegal votes be deducted, it would reduce the aggregate of votes cast, as well as reduce the votes for the respective propositions. Upon the relators' theory, this would leave the vote to stand as follows:

*Waterworks:*
Aggregate, 298; subtracting 9, equals 289.
Necessary to carry the proposition, 193.
Vote for, 205; subtracting 9, equals 196.

This shows an excess of 3 over the necessary two-thirds.

*Electric Lights:*
Aggregate, 290; subtracting 9, equals 281.
Necessary to carry the proposition, 188.
Vote for, 197; subtracting 9, equals 188.

It will thus be seen that, if the respondent be given full benefit of the alleged illegal votes, a full two-thirds of the vote cast upon each proposition was in favor of it.

The law provides, by section 4 of chapter 11 (Act No. 3, Pub. Acts 1895), that—

"Before any money shall be borrowed, appropriated, raised, or expended for the purchase or construction of waterworks in any village, the council shall cause to be made an estimate of the expense thereof, and the question of raising the amount required for such purpose shall be submitted to the electors of the village, at its annual

election, or at a special election called for that purpose by the council, as provided in this act, and shall be determined as two-thirds of the electors voting at such election by ballot shall decide."

The respondent contends that each proposition must have received votes in its favor equal to two-thirds of the number of voters who voted at the election. If we construe this to mean legal votes, we must deduct 9 from the poll list, which leaves 298 as the aggregate of votes cast, and 199 would be the necessary two-thirds for each proposition. Neither received that number. In the case of *Stebbins* v. *Judge of Superior Court*, 108 Mich. 693, a similar question was raised, and that case will be found to sustain the respondent's contention. Hence, if the allegations of the respondent's answer are true, both propositions were lost. This case is here upon demurrer to the respondent's answer, and we must, therefore, assume its statements to be true.

It is contended that this question cannot be raised in defense of an application for *mandamus*, and that the act of the president in signing bonds is ministerial, and that he cannot question the result of the election after it has been legally declared; and, again, that he has assented to and signed the contracts under which waterworks and an electric-light plant have been commenced and nearly completed. It is urged that he and the inhabitants of the village are estopped by their conduct in allowing such work to be done, and cannot now dispute the liability of the village. We recognize the impropriety of refusal by officers to take the essential steps to levy and collect the public revenue, but we think this case does not fall within the cases which hold that such officers cannot refuse to act. This president is asked to pledge the credit of the village, that its bonds may be put upon the market and sold. Upon the facts stated, any taxpayer might enjoin his action; but that is unnecessary where the officer himself, recognizing the illegality of such vote,

refuses to sign the bonds.   The answer alleges that those who have contracted to erect the plants had notice, before making the contracts, that the propositions were not legally carried.   This negatives any question of estoppel upon this record, if the acts of the president or the neglect of the taxpayers could effect an estoppel in any event.

No authority, other than the tax cases mentioned, is cited in support of the claim that the respondent cannot try the question of the legality of the election and canvass in a *mandamus* proceeding.   We find that it has been done in several instances.   In *People* v. *Trustees of Village of Ft. Edward*, 70 N. Y. 28, a *mandamus* was asked to compel the issue of bonds, and denied.   An inquiry into the question of whether the votes cast constituted a majority of the taxable inhabitants was held proper.   In *McMahon* v. *Supervisors*, 46 Cal. 214, the court investigated the proceedings preliminary to the election, and denied the writ, for want of a proper notice. In *People* v. *Ohio Grove Tp.*, 51 Ill. 192, while the writ was granted upon the insufficiency of a return which was demurred to, there is no suggestion that the proceedings were not open to investigation.   Again, in *People* v. *Cline*, 63 Ill. 394, a *mandamus* was sought to compel a supervisor to sign and deliver bonds of his township, of which he had previously executed and delivered $3,000. He defended on the grounds, among others, that the 10 residents who signed the petition for the election were not all legal voters, and that a sufficient number of the votes cast for the proposition to reduce the number below a majority were fraudulent, and that relator knew it.   In this case the claim was made that the respondent was estopped by the canvass.   But the court held otherwise.   The propriety of refusal by an officer to sign bonds under such circumstances was emphasized on rehearing.

We are of the opinion that the circuit court erred in sustaining relators' demurrer.   He should have over-

ruled it, and given them an opportunity of joining issue upon the answer, if they desired. His order is, therefore, reversed, and the case remanded for further proceedings.

The other Justices concurred.