ATTORNEY GENERAL *v.* STATE BOARD OF ASSESSORS.

1. TAXATION — UNIFORMITY — STATE BOARD OF ASSESSORS—STAT-
UTE—CONSTITUTIONALITY.

Section 11, art. 14, of the Constitution, provides the manner of
ascertaining the average rate of taxation upon the general
property of the State, and in so far as Act No. 282, Pub. Acts
1905, undertakes to repose in the board of assessors the right
to ascertain and determine from other sources than the as-
sessments actually made the amount at which the property
of the State should be assessed, and to use such estimate as a
divisor in ascertaining the rate of tax to be assessed upon the
property assessed by the board of assessors, it is in conflict
with the Constitution and void.

2. CONSTITUTIONAL LAW—LEGISLATIVE POWERS—LIMITATIONS.

The legislature has power to adopt a statute except as it is pro-
hibited by the Constitution.

3. SAME—VALIDITY OF STATUTE—EFFECT OF DOUBT.

A statute will not be declared in conflict with the Constitution
while serious doubt exists as to such conflict.

4. SAME—CANONS OF CONSTRUCTION — NATURAL SIGNIFICANCE OF
WORDS.

In all cases where a constitutional provision is to be interpreted,
the first resort is to the natural signification of the words em-
ployed in the order and grammatical arrangement in which
the framers of the instrument have placed them; and if, thus
regarded, the words used convey a definite meaning, which
involves no absurdity and no contradiction between different
parts of the same writing, then the meaning apparent on the
face of the instrument is the one which alone the court is at
liberty to say was intended to be conveyed.

Mandamus by John E. Bird, attorney general, to com-
pel the State board of assessors to make an assessment
against the property assessed by it at the rate determined
by the assessed value of other property in the State.    Cer-
tain railroad companies intervening.  Submitted February
9, 1906.    (Docket No. 224.)    Writ granted February 26,
1906.

At the session of 1905 the legislature, by Act No. 282, Pub. Acts 1905, provided for the assessment of the property of railroad, express, sleeping car, and other companies, in pursuance of section 11 of article 14 of the Constitution, as amended, and provided in substance that the rate at which such property should be taxed should be determined by the State board of assessors by dividing the aggregate amount of ad valorem taxes levied upon other property in the State by the aggregate true cash value of said other property as determined by said board; and that the true cash value should be determined upon such information as may be obtained by the board as members of the board of State tax commissioners, or from any other source, according to their best knowledge and judgment.

Acting under this statute, the board, in January of the present year, ascertained and determined the rate to be $0.0146+ on the dollar. This rate was ascertained by dividing the total of taxes assessed against other property by the sum of $1,875,000,000, which said sum the board determined to their best knowledge and judgment to be the total of the true cash value of all the other taxable property in the State. The assessed value of all such other property in the State was $1,574,422,770.

The attorney general files this petition for mandamus to require the respondents to make the assessment at a rate to be determined by dividing the taxes actually levied by the value of the property as it was actually assessed in the various municipalities of the State.

*Henry E. Chase, Charles W. McGill, George S. Law,* and *Thomas Ambrose Lawler,* for relator.

*Horace M. Oren,* for respondent.

*Benton Hanchett, Ashley Pond, Henry Russel,* and *O. E. Butterfield,* for interveners.

MONTGOMERY, J. (*after stating the facts*). The contention of the attorney general is that section 11 of article

14 of the Constitution provides the manner of ascertaining the average rate of taxation, and that, in so far as Act No. 282 of the Public Acts of, 1905 undertakes to repose in the board of assessors the right to ascertain and determine from other sources than the assessments actually made the amount at which the property of the State should be assessed, and to use such estimate as a divisor, it is in conflict with the provisions of the Constitution, and is void.   On the part of the intervening railroad companies, it is contended that the Constitution does not provide a method of ascertaining the rate to the exclusion of legislative power, and does not forbid the legislature from providing for ascertaining the true basis; that it does not prescribe what shall be the evidence upon which the determination of the State board of assessors shall be made, nor the means to employ in such determination; that it does contemplate that they are to ascertain and determine the rate of taxation which is in fact levied upon other properties at their cash valuation.   This argument is based upon other constitutional provisions, which provide that property shall be assessed at its true cash value.

Counsel representing the board of assessors goes still further in his contention, and urges that by the terms of the constitutional provision itself, providing for assessment of properties assessed by the State board of assessors, the power is conferred upon such board to determine, according to their best judgment, what the average rate levied upon other property of the State may be.   It is strenuously argued that it appears by the action of this board, and otherwise, that, as a matter of fact, other property in this State is not assessed by local assessors at its full cash value, and that such inequality of assessment is taken notice of by the constitutional provision that once in five years there shall be an equalization between counties by a State board of equalization, and by the legislation which has existed for many years providing for equalization between the townships and wards in a county.

It is not to be denied that the history of the State has

shown in the past many attempts to evade the constitutional provision for taxation of property at its full cash value. Nor is it intended to imply that, if the corrective was intended to be conferred by this constitutional provision upon the State board of assessors, they have acted unreasonably or improperly. Indeed, it may be said that with the statute in question before them, prima facie valid, it called for their action along the lines which they followed and for their ascertainment, according to their best judgment, of the real assessable value of the property of the State. But, fully realizing that the question of the policy of this provision of the Constitution is not a controlling question, we address ourselves to the question: What is that provision? It reads as follows:

"The legislature shall provide a uniform rule of taxation, except on property paying specific taxes, and taxes shall be levied on such property as shall be prescribed by law: *Provided*, That the legislature shall provide an uniform rule of taxation for such property as shall be assessed by a State board of assessors, and the rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate levied upon other property upon which ad valorem taxes are assessed for State, county, township, school and municipal purposes." Section 11, art. 14, Const. of Mich., as amended.

But two principles of construction need be referred to, both of which are well settled in this State. The first is that the legislature has power to adopt a statute, except as it is prohibited by the Constitution (*Smith* v. *Railway Co.*, 114 Mich. 460); and that a statute will not be declared in conflict with the Constitution while serious doubt exists as to such conflict. The other principle is that the first resort, in all cases where a constitutional provision is to be interpreted, is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them; and, if thus regarded, the words used convey a definite meaning, which involves no absurdity and no contradic-

tion between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such cases there is no room for construction. Cooley on Constitutional Limitations (5th Ed.), pp. 69, 70.

Notwithstanding the able argument of counsel for the board, and the able and elaborate briefs of counsel for the intervening railroad companies, we are satisfied that this constitutional provision is well within the rule last cited. There is little room for construction. The important words are:

"The rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate *levied* upon other property upon which ad valorem taxes *are* assessed for State, county, township, school and municipal purposes."

It is very clear that this excludes all idea that provision might be made for ascertaining an average rate by taking account of property upon which no taxes are assessed. To do so would be to do violence to the language employed. Let the language be again repeated, with words in parenthesis which *emphasize* rather than *indicate* the meaning of the language employed:

"The rate of taxation on such property shall be the rate which the State board of assessors shall ascertain and determine is the average rate (actually) levied upon other property upon which ad valorem taxes are (in fact) assessed for State, county, township, school and municipal purposes."

As was said in the case of the *Board of Education of Detroit* v. *State Board of Assessors,* 133 Mich. 116:

"We think the clear intent and purpose of this provision is that the rate which is actually levied upon property actually assessed is the rate contemplated by the language employed. This constitutional provision cannot be segregated from other provisions relating to the subject of taxation. Construed in the manner above indicated, it is in entire accord with our whole system of taxation, which is not only that railroad property, but that all other property,

shall be assessed at its cash value, and that all classes of property shall bear the burden of taxation equally."

It is true that certain provisions of the Constitution and of the statute may be construed as implying that it is not expected that exact equality will be attained by assessment. Nevertheless, the Constitution does provide for assessment at cash value. The statutes provide by whom the assessment shall be made, and, as to certain of the assessments, they are of necessity made by local officers, and there is no inharmony between the amended section 11 and section 12, article 14, which provides for the assessment of property at its cash value. But, if the view taken by the board of assessors was to prevail, it would follow that, so far from correcting the wrong under which the individual taxpayer whose property is assessed at its full value suffers from the undervaluation as compared with other property; his grievance would be increased by the attempt to provide as a divisor a fictitious sum not actually assessed, but which should have been assessed according to the judgment of the assessing board. This would clearly render the provision inharmonious, and is a construction not to be adopted, unless it may be fairly said that the language employed is susceptible to that construction. But, in the view of the writer, the question is not an intricate or difficult one. The language employed in this amendment is plain, clear English. It requires no interpretation. It expressly provides for a rate which is to be determined to be the rate *levied* upon other property upon which ad valorem taxes *are assessed.*

The writ of mandamus will be granted, as prayed.

McAlvay, Grant, Ostrander, and Hooker, JJ., concurred.