PEOPLE *v.* BOARD OF STATE CANVASSERS.

1. CONSTITUTIONAL LAW—CANONS OF CONSTRUCTION—NATURAL SIGNIFICANCE OF WORDS.

   In all cases where a constitutional provision is to be interpreted, the first resort is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them; and if, thus regarded, the words used convey a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone the court is at liberty to say was intended to be conveyed.

2. ELECTIONS—MAJORITY OF VOTERS.

   Where it is directed by the controlling law that a proposal be submitted at an election and that it shall be decided by a majority of those voting at such election and not merely a majority of those voting upon the particular proposal in question, a majority of all votes cast at the election is essential to approve the proposal.

---

REFERENCES FOR POINTS IN HEADNOTES

[1] 11 Am. Jur., Constitutional Law, § 65.
[2, 4] 11 Am. Jur., Constitutional Law, § 31; 18 Am. Jur., Elections, § 244.
[2, 4] Basis for computing majority essential to the adoption of a constitutional or other special proposition submitted to voters. 131 A.L.R. 1382.
[3] 18 Am. Jur., Elections, § 248.
[5] 14 Am. Jur., Costs, § 23; 35 Am. Jur., Mandamus, § 393.

3. Constitutional Law—Question of Calling a Convention for General Revision—Elections.

Under statute submitting question of calling a convention for the purpose of making a general revision of the Constitution, in which the proposition was to be submitted at a specified general election and conducted in the same manner and by the same officers, notices and inspectors as provided at biennial spring elections and certified by the secretary of State in same manner as provided for amendments to the Constitution, the question was submitted at a general election, not a special election held contemporaneously with the general election (Act No. 292, Pub. Acts 1947).

4. Same—Question of Calling Convention to Make General Revision—Majority Necessary.

A majority of those voting at election at which legislators were elected not having voted in favor of calling a convention for purpose of making a general revision of the Constitution, the proposition was not approved notwithstanding a majority of those voting on the specific question as to whether or not such convention should be held voted in favor thereof (Const. 1908, art. 17, § 4; Act No. 292, Pub. Acts 1947).

5. Costs—Public Question—Constitutional Convention.

No costs are allowed in mandamus proceeding to compel board of State canvassers to certify that the question of calling a convention to make a general revision of the Constitution did pass, a public question being involved (Const. 1908, art. 17, § 4; Act No. 292, Pub. Acts 1947).

Mandamus by the People of the State of Michigan, by the Attorney General, to compel Fred M. Alger, Jr., Secretary of State, Lee M. Thurston, Superintendent of Public Instruction, and D. Hale Brake, State Treasurer, comprising the Board of State Canvassers, and Fred M. Alger, Jr., Secretary of State, to certify that the question of calling a constitutional convention did pass when submitted to the people pursuant to Act No. 292, Pub. Acts 1947. Submitted January 21, 1949. (Calendar No. 44,317.) Writ denied January 27, 1949.

*Stephen J. Roth*, Attorney General, and *Peter E. Bradt*, Assistant Attorney General, for plaintiff.

*G. Douglas Clapperton,* Assistant Attorney General, for defendants.

*Beaumont, Smith & Harris (Albert E. Meder,* of counsel), and *Chester J. Morse, amici curiae.*

Butzel, J.   The people of the State of Michigan, plaintiff, by the attorney general, seek a writ of mandamus in this Court to compel the board of State canvassers and the secretary of State, defendants, to certify that the question of calling a constitutional convention, and submitted to the people pursuant to the terms of Act No. 292, Pub. Acts 1947* did pass, and that the secretary of State notify the several county clerks as required thereby.

Act No. 292, Pub. Acts 1947* (Stat. Ann. 1947 Cum. Supp. § 6.284[1] *et seq.*) provides that at the general election to be held on the first Tuesday after the first Monday in November, 1948, the question of calling and holding a convention for the purpose of making a general revision of the State Constitution pursuant to the provisions of section 4 of article 17 of the Constitution, be submitted to the electors of the State qualified to vote for members of the legislature.   It further provides, in the main, that the election be conducted in the same manner, by the same officers, notices of time and place, and also the same canvass, statement and returns made as provided by the election laws of the State for the biennial spring election.   The secretary of State was directed to certify the question to the several county clerks, separate ballots were to be provided and the form of the ballot was set forth.   At the general election so held in November, 1948, at which the governor and members of the legislature were elected, the question of calling and holding such convention received 855,451 votes in its favor and 799,198 votes against it.   While it prevailed by a majority of the

*.1 Comp. Laws 1948, § 200.201 *et seq.*—Reporter.

·votes cast on this particular question, it is conceded that it lacked 201,111 votes of receiving a majority of the number of votes cast for the office of governor. 2,113,122 votes were cast for governor and apparently approximately that number were cast for the members of the legislature. All electors qualified to vote for the governor are qualified to vote for members of the legislature.

Section 4 of article 17 of the Constitution of 1908 provides as follows:

"At the general election to be held in the year nineteen hundred twenty-six, in each sixteenth year thereafter and at such other times as may be provided by law, the question of a general revision of the Constitution shall be submitted to the electors qualified to vote for members of the legislature. In case a majority of such electors voting at such election shall decide in favor of a convention for such purpose, at the next biennial spring election the electors of each senatorial district of the State as then organized shall elect three delegates."

Defendants, the board of State canvassers, refused to certify that the question had carried, or to carry out the mechanics set forth for the election of the delegates to the convention. The defendants con-tend that "a majority of the electors voting at such ·election" did not decide in favor of a convention for the purpose of revising the Constitution. Plaintiff asserts that it only required a majority of the elec-tors who voted on the particular question, and not of those that voted at the general election. Because ·of a difference of opinion by the attorney general's ·office, one assistant attorney general was authorized to act for the attorney general, while another assistant attorney general was authorized to act for the defendant State officers. They, as well as attorneys for *amici curiae,* have filed very excellent briefs, particularly in view of the fact that the exigencies

of the case demanded very prompt action by them and this Court.

The main question involved in this suit is whether section 4 of article 17 requires that the proposal for a general revision of the Constitution, as submitted to the electors on a general election day, must be adopted by a majority of the qualified electors who voted for governor (and inferentially the legislature), as asserted by the defendants, or whether a majority of only those who voted on the proposal for calling a convention is sufficient, as plaintiff claims.

A brief historical sketch showing the genesis of the constitutional provision may be helpful. It appears in the first Constitution of the State of Michigan (Constitution, 1835, art. 13, § 2). The debates, reports, official journals, et cetera, are fully set forth in the "Michigan Constitutional Conventions of 1835 and 1836," by Harold M. Dorr of the University of Michigan. In the original draft of the section there was a requirement that "two thirds of the inhabitants of the State, entitled to vote for representatives," must vote for a convention. 1835 Journal, pp. 17 and 30; Dorr, *supra,* pp. 462 to 484. This draft was not accepted and a new one was proposed which required "a majority of all the citizens of the State qualified to vote for representatives" in order to call a convention. 1835 Journal, pp. 42 and 105; Dorr, *supra,* p. 507. This again was not satisfactory and the convention agreed on what became article 13, § 2, Constitution of 1835 (1835 Journal, 144; Dorr, *supra,* p. 361). It provided for a majority of the electors qualified to vote for members of the legislature "voting at such election." Section 2 of article 20 of the Constitution of 1850 again required that the question of the general revision of the Constitution "shall be submitted to the electors qualified to vote for the members of the legislature, and in case of a majority of the electors so qualified, voting at such election,

shall decide in favor of a convention for such purpose," the legislature, at its next session, should provide by law for the election of the delegates to such convention.

In the Constitution of 1908, it is provided in section 1 of article 17 that "if a majority of electors qualified to vote for members of the legislature voting thereon shall ratify and approve such amendment or amendments, the same shall become part of the Constitution." However, it is very significant that in section 4 of article 17 a different vote is required for a convention to revise the Constitution. This section provides that "the question of a general revision of the Constitution shall be submitted to the electors qualified to vote for members of the legislature. In case a majority of *such* electors voting at such election shall decide in favor of a convention for such purpose," then delegates are to be elected for such convention. The difference in the language used in prescribing the vote required for amendments and for revision undoubtedly was purposely made and cannot be ignored. It follows, in the main, the provision of the original Constitution of 1835, where the proceedings show how zealously the delegates guarded against a revision of the entire Constitution without the approval of the majority of the electors who voted at the next election for members of the legislature. Had the Constitution of 1908 meant to give the right to initiate a revision to the majority of the electors who voted for the revision, it would have used words to that effect as it did in regard to voting for amendments. This wording of section 4 of article 17 of the Constitution of 1908 is plain and free from ambiguity, and requires no judicial construction to determine its meaning. In *Attorney General* v. *State Board of Assessors,* 143 Mich. 73, the Court in discussing the rules of con-

struction to be applied to the constitutional provisions said:

"The other principle is that the first resort, in all cases where a constitutional provision is to be interpreted, is to the natural signification of the words employed in the order and grammatical arrangement in which the framers of the instrument have placed them; and, if thus regarded, the words used convey a definite meaning, which involves no absurdity and no contradiction between different parts of the same writing, then the meaning apparent on the face of the instrument is the one which alone we are at liberty to say was intended to be conveyed. In such cases there is no room for construction. Cooley on Constitutional Limitations (5th Ed.), pp. 69, 70."

Also, see *Vetter* v. *Fowler,* 167 Mich. 499, where it was stated:

"We agree with the learned circuit judge that this section of the Constitution is not ambiguous. The rule that effect must be given to the entire section is a fundamental one, as is also the one that words must be given their usual and ordinary meaning."

The question presented is not new. Many of the cases in foreign jurisdictions are annotated in 131 A.L.R. 1382. There is ample authority for the positions of both of the respective parties to this suit, but it also will be found that in many of the cases different wording of the statutes and constitutional provisions occur. In *Re Denny,* 156 Ind. 104 (59 N. E. 359, 51 L.R.A. 722), where a similar question arose, the court found that there was no room for construction because the language was too plain to permit any quibbling. It stated:

"It seems unnatural to say * * * that the indifference of the many should be a positive element in effecting an organic change desired by the few."

To like effect, *In re Todd,* 208 Ind. 168, 192 (193 N. E. 865), which overruled *In re Denny, supra,* in other respects.

While the plaintiff may present an argument to the contrary, we believe that when it comes to a revision of the fundamental or basic law as set forth in the Constitution, the plain and explicit terms of the Constitution must be followed. We, however, need not go far afield by reference to decisions in other States, as we would if a new question was presented, for the question has been definitely and squarely ruled upon in this State. In an opinion of Horace M. Oren, Attorney General, addressed to the house of representatives in 1899, calling attention to a similar provision in article 20, § 2, of the Constitution of 1850 (see Opinions of Attorney General 1899, p. 75), he expressly stated that it required a majority vote of all the electors voting at the election, and not of those voting on the revision. He particularly stressed the difference between the vote required by the Constitution for amendment and that for revision. He cited, as controlling the issue, the opinion of this Court in *Stebbins* v. *Judge of Superior Court of Grand Rapids,* 108 Mich. 693, where, as he stated, it was held that:

" 'When the qualified electors of the city voting in their respective wards, shall have authorized the issuing of said bonds by a majority of their votes, cast at any regular election,' a majority of all votes cast at the election, and not merely a majority of those cast on bonding the city, is essential to authorize the issuance of the bonds."

He calls attention to the fact that the Court refused to follow an early Wisconsin decision (*Gillespie* v. *Palmer,* 20 Wis. 544), but followed the reasoning in *Dayton* v. *City of St. Paul,* 22 Minn. 400, and many other decisions in other jurisdictions, holding

that under similar language it required the majority of all electors voting, not merely those voting on the proposal. The case of *Stebbins* v. *Judge of Superior Court of Grand Rapids, supra,* has been followed in *Daniels* v. *Long,* 111 Mich. 562. Plaintiff cites *Shearer* v. *Board of Supervisors of Bay County,* 128 Mich. 552, but it, as well as other cases relied upon by plaintiff, were decided on different points and in no way reversed the *Stebbins Case.*

It is also significant that the members of the convention who framed the Constitution of 1908 must have had in mind the cases of *Stebbins* v. *Judge of Superior Court of Grand Rapids, supra,* and *Daniels* v. *Long, supra,* when article 17, § 4, of the Constitution was drafted and submitted.

Plaintiff asks us to regard the vote on the constitutional revision as one held at a special election held contemporaneously with the general election. The facts as well as the law show there is no basis for this claim.

Plaintiff further claims that the vote for a revision of the 1850 Constitution and resulting in and setting the mechanics in motion that led to the adoption of the 1908 Constitution, was cast at a spring election when no legislators or other State officials were elected and this indicates that it was a special election. The Constitution, as submitted by the convention, was duly adopted by a majority vote of the electors, and has not been attacked in over 40 years. A sufficient answer to plaintiff's claim is that the vote at the general election in November, 1948, is now under consideration. At it legislators and other State officials were elected. A majority of those voting did not vote for the revision, which thus did not carry.

Other questions are raised but we believe they do not merit discussion in view of our opinion.

A writ of mandamus is denied, without costs.

SHARPE, C. J., and BUSHNELL, BOYLES, REID, NORTH, DETHMERS, and CARR, JJ., concurred.