McKEIGAN v GRASS LAKE TOWNSHIP SUPERVISOR

Docket No. 195437. Released May 8, 1998, at 9:00 A.M.; vacated May 20, 1998.

Before: HOOD, P.J., and McDONALD and YOUNG, JR., JJ.

YOUNG, JR., J. Plaintiffs appeal as of right from the order denying their request for a writ of mandamus compelling defendant to comply with his statutory duties under the opening of private roads and temporary highways act, MCL 229.1 *et seq.*; MSA 9.281 *et seq.* For the reasons stated below, we are constrained to reverse and remand for further proceedings.

## I. UNDERLYING FACTS AND PROCEDURAL HISTORY

This dispute arose as a product of plaintiffs' effort to gain approval for opening a private road over the property owned by L & L Development, Ltd. (L & L), which property ran adjacent to the western boundary of plaintiffs' property.[1] Plaintiffs apparently desire to build a subdivision on their land which was to be accessed by a private road situated on the L & L property.

On January 29, 1996, plaintiffs applied to the Grass Lake Township supervisor for the opening of a private road across L & L's property in accordance with the opening of private roads act. By letter dated April 10, 1996, defendant's attorney advised plaintiffs that the Grass Lake Township Board had adopted a motion denying their request. The letter further

---

[1] In a dispute unrelated to this appeal, plaintiffs and L&L contested whether plaintiffs owned an easement over L&L's land. The resolution of this ancillary dispute may well be outcome determinative of the dispute in this case if it is determined that plaintiffs have a valid easement over L&L's land such that plaintiffs may use that easement to gain access to their property. However, that dispute was not resolved before the time this case was submitted for decision, and we have no information concerning its conclusion, if any.

advised that the township board was uncertain of the constitutionality of the act, noting that one decision of this Court had held it unconstitutional while another had held it constitutional. The board further advised that, even if the act were valid, it was intended only to apply to "one, and only one owner who might find himself with a landlocked parcel of land," not to plaintiffs' situation in which plaintiffs sought to develop a subdivision on their property serviced by the proposed private road on L & L's land.

In response, plaintiffs filed a complaint for a writ of mandamus against defendant for his failure to comply with the statutory duty under the act to commence a proceeding in accordance with its provisions. Plaintiffs also alleged that defendant, being a real estate broker involved in offering lots for sale by L & L, had an economic stake in the L & L property, creating a conflict of interest such that any proceeding conducted by defendant under the act would be unfair. Plaintiffs requested that the trial court issue a writ of mandamus compelling defendant to perform his duties under the act and further to exercise supervisory control over the proceedings.

Following a hearing, the trial court denied plaintiffs' request for a writ of mandamus, essentially finding that, because the act authorized a taking for private use and did not provide "even rudimentary due process," the act was therefore unconstitutional. The trial court recognized that this Court in *Bieker v Suttons Bay Twp Supervisor*, 197 Mich App 628; 496 NW2d 398 (1993), upheld the constitutionality of the act against an identical taking challenge, but criticized the *Bieker* Court's holding as "deeply flawed." Finally, the trial court concluded that the act, even if constitutional, did not apply to plaintiffs' circumstances:

> Even if it were to be found that the [opening of private roads act] was constitutional and that the supervisor was authorized to act, he would not be authorized to create a road other than for the title-holder of the land seeking the road. Any determination of necessity would solely go to that title-holder and would not go to a subdivision or even to multiple purchasers under the title-holder. To extend the use beyond the title-holder converts it from a private road to a public road.

Plaintiffs appeal from the May 16, 1996, order and opinion denying their request for a writ of mandamus.

## II. CONSTITUTIONALITY OF THE PRIVATE ROADS ACT

### A. TAKING CLAUSE

We first address the trial court's decision holding that the private roads act violates the Taking Clause of the 1963 Constitution, art 10, § 2. We agree with the trial court on this issue and would affirm its decision were we not obligated by MCR 7.215(H) to follow this Court's contrary decision in *Bieker*. Because we believe *Bieker* to be wrongly decided, we declare a conflict with that decision under MCR 7.215(H).

We must construe statutes and constitutional provisions according to their plain terms. *Grand Traverse Co v Michigan*, 450 Mich 457, 464; 538 NW2d 1 (1995); *Michigan Bell Telephone Co v Dep't of Treasury*, 445 Mich 470, 486; 518 NW2d 808 (1994). If the meaning of a statute or constitutional provision is clear and unambiguous, there is no room for judicial construction or interpretation. *Coleman v Gurwin*, 443 Mich 59, 65; 503 NW2d 435 (1993); *People v Bd of State Canvassers*, 323 Mich 523, 528-529; 35 NW2d 669 (1949). Applying these principles to the private roads act, we conclude that the act is irreconcilably at odds with our 1963 constitution.

The private roads act states, in relevant part, as follows:

> When an application is made to the township supervisor for a private road, he shall give notice in writing to the owner or occupant of the land over which the road is proposed to be laid out, to meet on a day and at a place certain, which shall not be more than 10 nor less than 5 days from the time of service of the notice, for the purpose of aiding in the striking of a jury to determine the necessity of the road. [MCL 229.1; MSA 9.281.]

> At the time and place for selecting a jury the township supervisor shall direct a disinterested person to record the names of 12 disinterested property owners, from which the owner or occupant of the land to be crossed by the road and the applicant for the road shall strike 3 names each. The balance remaining on the list shall form the jury. [MCL 229.2; MSA 9.282.]

> Such freeholders, when met, shall be sworn by the commissioner well and truly to examine in regard to the necessity of such road, and in case they shall decide that such road is necessary, to justly and impartially appraise the damages of the owner or owners, or occupant of the land, by reason of laying out such road. [MCL 229.3; MSA 9.283.]

The private roads act unambiguously and unmistakably authorizes, by state process, a *private* condemnation and taking. See *Ayres v Richards*, 38 Mich 214, 216 (1878). Indeed, the very language of the statute makes it clear that the only kind of taking contemplated is one in which a private party seeks to compel another to surrender ownership of land, albeit for a price ("damages") to be determined by a jury of freeholders. Consequently, the question posed by plaintiffs' invocation of the private roads act to acquire a portion of L & L's land is whether the act offends Const 1963, art 10, § 2, which prohibits the taking of property other than for a "public use" and with just compensation. We believe that it does.

Const 1963, art 10, § 2 provides:

> Private property shall not be taken for public use without just compensation therefore being first made or secured in a manner

prescribed by law. Compensation shall be determined in proceedings in a court of record.

We do not think that the language of art 10, § 2 can be remotely read or understood as permitting a taking for a private use. Thus, a simple comparison of the text of art 10, § 2 and the language of the private roads act makes it patent that the 1963 constitution's flat prohibition of taking other than for a "public use" is manifestly at odds with the private taking that is explicitly authorized by the act. Our constitution and the act simply embrace antipodal objectives. Indeed, in its Address to the People, the Constitutional Convention advised Michigan voters that art 10, § 2 of our then-proposed constitution was "a revision of Sec. 1, Article XIII of the [1908] Constitution which, in the judgment of the convention, is *sufficient to safeguard against taking of property for private use.*" 2 Official Record, Constitutional Convention 1961, p 3403 (emphasis added). Consequently, when the people of Michigan voted to ratify the 1963 Constitution, the unambiguous language of the proposed constitution, as well as the construction of that text provided by the Constitutional Convention, made it ineluctably plain that art 10, § 2 precluded the taking of property for private use.

Apart from the unambiguous purpose of the constitutional text, we also find important to our analysis the fact that when the private roads act was originally enacted over one hundred years ago, Const 1850, art 18, § 14 explicitly authorized the taking of private property to open a private road. Similar language was carried over into the successor constitution. See Const 1908, art 13, § 3. However, this language was *removed from* the 1963 constitution, leaving only the art 10, § 2 *prohibition against* the taking of private property except for a "public use" and upon payment of just compensation. This fundamental change in the constitutional text thus provides additional weight to our reading of art 10, § 2, as well as our conclusion that the private roads act is unconstitutional.[2]

---

[2] The Court in *Bieker* attempted to finesse the problem occasioned by the deliberate omission of the language authorizing the taking of private roads, noting that the framers of the 1963 constitution apparently did not intend "to remove from the Legislature the power to provide for private roads in the case of necessity." *Bieker, supra* at 631, quoting in support of its conclusion a colloquy found in 2 Official Record, Constitutional Convention 1961, p 2846. To the extent that the *Bieker* panel invites us to look beyond the unambiguous and explicit text of the 1963 constitution, a proposition with which we strongly disagree, see *Bd of State Canvassers, supra*, it is clear that it is the intent of the people who *adopted* the proposed constitution that is controlling, and not the intent manifested in the internal deliberations of the framers. As the Supreme Court explained in *Regents of the Univ of Michigan v Michigan*, 395 Mich 52, 59-60; 235 NW2d 1 (1975):

The debates must be placed in perspective. They are individual expressions of concepts as the speakers perceive them (or make

1. *POLETOWN NEIGHBORHOOD COUNCIL v DETROIT:* "PUBLIC USE"

Because the act cannot pass constitutional muster unless it can be interpreted as authorizing a taking for a "public use," it is necessary to consider the meaning of that term. Our Supreme Court provided an authoritative construction of Const 1963, art 10, § 2 in *Poletown Neighborhood Council v Detroit,* 410 Mich 616; 304 NW2d 455 (1981). In that case, the Detroit Economic Development Corporation sought to use the power of eminent domain granted to it by the Economic Development Corporations Act, MCL 125.1601 *et seq.*; MSA 5.3520(1) *et seq.*, to acquire a tract of land that would then be conveyed to General Motors Corporation as a site for the construction of an automobile assembly plant.

In addressing the constitutionality of the proposed condemnation, the Supreme Court explained the requirement found in Const 1963, art 10, § 2 that the taking of private property be for a "public purpose":

> There is no dispute about the law. All agree that condemnation for a public use or purpose is permitted. All agree that condemnation for a private use or purpose is forbidden. Similarly, *condemnation for a private use cannot be authorized whatever its incidental public benefit* and condemnation for a public purpose cannot be forbidden whatever the incidental private gain. *The heart of this dispute is whether the proposed condemnation is for the primary benefit of the public or the private user.* [*Poletown, supra* at 632 (emphasis added).]

---

an effort to explain them). Although they are sometimes illuminating, affording a sense of direction, they are not decisive as to the intent of the general convention (or of the people) in adopting the measures.

Therefore, we will turn to the committee debates only in the absence of guidance in the constitutional language as well as in the "Address to the People," or when we find in the debates a recurring thread of explanation binding together the whole of a constitutional concept. The reliability of the "Address to the People" (now appearing textually as "Convention Comments") lies in the fact that it was approved by the general convention on August 1, 1962 as an explanation of the proposed constitution. The "Address" also was widely disseminated prior to adoption of the constitution by vote of the people.

Because the text of Const 1963, art 10, § 2 admits of no ambiguity that takings for a private use are constitutionally prohibited, there can be no justification for ignoring that text and looking to the deliberations of the members of the Constitutional Convention for guidance as to the meaning of that text. This principle of constitutional construction is particularly appropriate when, as here, the Constitutional Convention's Address to the People reaffirmed that the text was intended to mean exactly what it so obviously says.

The Court determined that the proposed condemnation at issue withstood constitutional scrutiny because the public would receive the primary benefit:

> In the instant case the benefit to be received by the municipality invoking the power of eminent domain is a clear and significant one and is sufficient to satisfy this Court that such a project was an intended and a legitimate object of the Legislature when it allowed municipalities to exercise condemnation powers even though a private party will also, ultimately, receive a benefit *as an incident thereto.*
>
> The power of eminent domain is to be used in this instance primarily to accomplish the essential public purposes of alleviating unemployment and revitalizing the economic base of the community. The benefit to a private interest *is merely incidental.*
>
> Our determination that this project falls within the public purpose, as stated by the Legislature, does not mean that every condemnation proposed by an economic development corporation will meet with similar acceptance simply because it may provide some jobs or add to the industrial or commercial base. If the public benefit was not so clear and significant, we would hesitate to sanction approval of such a project. *The power of eminent domain is restricted to furthering public uses and purposes and is not to be exercised without substantial proof that the public is primarily to be benefited. [Id.* at 634-635 (emphasis added).]

In our opinion, *Poletown* holds beyond question that a taking is constitutional only if there is substantial proof that the *public* is primarily to be benefited by it. By contrast, the language of the private roads act purports to address no public purpose; instead, it addresses only private interests. Because the act was enacted at a time when our constitution then explicitly authorized the taking of property for the purpose of creating a private road, it is not surprising that the act is so framed. However, given the clear and unambiguous language of Const 1963, art 10, § 2, we believe that the act is unconstitutional on its face.

2. CONSTRUCTION OF THE PRIVATE ROADS ACT BY THE COURT OF APPEALS

Our Court has, on two occasions, considered the constitutionality of the private roads act under our 1963 constitution. In *White Pine Hunting Club v Schalkowski,* 65 Mich App 147, 149; 237 NW2d 223 (1975), a panel of this Court, finding "no 'public use' to support the statute," concluded that it was unconstitutional. In *Bieker,* a later panel of this Court rejected the *White Pine* Court's analysis as "flawed." The *Bieker* panel correctly recognized that, because the private roads act unquestionably involves a state-sanctioned condemnation, any taking accomplished under the act must, pursuant to Const 1963, art 10, § 2, be for a "public purpose":

> We must disagree with the dissenter in *White Pine,* and conclude that the statute is subject to the requirement found in Const 1963,

art 10, § 2 that the taking of private property be for a public purpose. As our Supreme Court has said, "condemnation for a private use or purpose is forbidden." *Poletown Neighborhood Council v Detroit*, 410 Mich 616, 632; 304 NW2d 455 (1981); see also *Shizas v Detroit*, 333 Mich 44, 50; 52 NW2d 589 (1952). [*Bieker, supra* at 632.]

Notwithstanding, the *Bieker* panel, ironically relying on *Poletown*, found that the private roads act was constitutional because the statute itself implicitly embodied a "public use":

The statute provides for the laying out of private property only where necessary. MCL 229.4; MSA 9.284. "The taking is only justifiable where no other way of access to the lands of the applicant can be found." *Ayres, supra*. In such a situation, providing access to land is beneficial to the community as a whole. Without such access, the land has no value either to its owner or to the community. When the landlocked property is made accessible, its value can be fully realized. The economic activity resulting from the land's use benefits the community as a whole and the increase in the land's value broadens the community's tax base. In *Poletown, supra*, pp 632-635, our Supreme Court approved the condemnation of private property to be conveyed to a private manufacturer because the Court found a public use in advancing the public's interest in alleviating unemployment and revitalizing the economic base of the community. [*Id.* at 632-633.]

Thus, the *Bieker* panel concluded that the statute is constitutional to the extent that it "authorizes the laying out of private roads only where necessary to provide access to property that would otherwise be inaccessible." *Id.* at 633.

With all due respect to the *Bieker* panel's conclusion, we cannot agree that the taking of a portion of one individual's private property in order to open a road for the private use and benefit of another can be characterized as one inherently imbued with a *primary* public purpose. In *Poletown*, the Supreme Court found that the transfer of private property to General Motors provided a "clear and significant" benefit to the public, the alleviation and prevention of conditions of unemployment, and that the benefit to General Motors was merely incidental.[3] *Poletown, supra* at

---

[3] Whatever the merit of that proposition, the *Poletown* Court at least had the benefit of a statute in which the Legislature spelled out the public purpose to be served by a taking accomplished under its provisions. See MCL 125.1602; MSA 5.3520(2). No such statement of intended public purpose can be found in the private roads act. Indeed, in the very text from the *Poletown* decision quoted in the body of this opinion, the Supreme Court stated that even takings pursued under the Economic Development Corporations Act could not be constitutionally sanctioned without proof that the public benefit was "clear and significant." *Poletown, supra* at 634-

634. Contrariwise, we conclude and would hold that the primary benefit under the private roads act inures to the landlocked private landowner seeking to open a private road on the property of another, and that any benefit to the public at large is purely incidental and far too attenuated to support a constitutional taking of private property.

Notwithstanding the decision of the *Bieker* panel, we submit that there is nothing in the private roads act to indicate that an authorized taking under it in any way serves a "public purpose." Indeed, a jury impaneled under the act is obligated only to decide whether the *petitioner* has shown that the road is necessary and the amount of damages to which the landowner whose property has been expropriated is entitled. See MCL 229.2, 229.4; MSA 9.282, 9.284. If we take, as we must, the Supreme Court at its word in *Poletown*—that a condemnation can be justified only if its *primary* purpose is for the benefit of the public—the *Bieker* panel's purported rationale simply cannot support the constitutionality of a statute that, on its face, is solely directed to conferring a benefit on *private* interests. If, as the *Bieker* panel found, allowing an applicant to fully realize the value of his land is a sufficient public benefit to support the taking of another individual's private property under the act, then it appears to us that almost *any* taking of private property could be constitutionally justified as furthering some tenuous "public purpose."

While we are mindful of the presumption of validity accorded to acts of the Legislature, *Michigan Soft Drink Ass'n v Dep't of Treasury*, 206 Mich App 392, 401; 522 NW2d 643 (1994), we are unable to conclude that the private roads act squares with the constitutional guarantees embodied in Const 1963, art 10, § 2. The rationale of *Bieker* is precisely the kind that we believe the Supreme Court expressly foreclosed in *Poletown*. Nevertheless, because *Bieker* is controlling precedent with respect to this issue, we are bound to follow it by the mandate of MCR 7.215(H).

### B. DUE PROCESS

The trial court also found the private roads act to be unconstitutional because it does not afford property owners adequate due process. We disagree.

No person may be deprived of life, liberty, or property without due process of law. US Const, Am V; Const 1963, art 1, § 17. Due process generally requires some form of a hearing before deprivation of a property interest. *Brandon Twp v Tomkow*, 211 Mich App 275, 281-282; 535 NW2d 268 (1995). " 'The formality and procedural requisites for the hearing can vary, depending upon the importance of the interests involved and the nature of the subsequent proceedings.' " *Dow v Michigan*, 396 Mich 192,

---

635. *Poletown* demonstrates how stringent must be the constitutional inquiry when a taking of private property is involved. Contrary to the *Bieker* panel's conclusory determination that the private roads act creates an inherent public use by increasing the utility and value of landlocked property, *Poletown* appears clearly to preclude this form of superficial justification for a taking.

204-205; 240 NW2d 450 (1976), quoting *Boddie v Connecticut*, 401 US 371, 378; 91 S Ct 780; 28 L Ed 2d 113 (1971). Where an important interest is affected, as here, "rudimentary due process" must be afforded. *Bundo v Walled Lake*, 395 Mich 679, 696; 238 NW2d 154 (1976). According to *Bundo*, rudimentary procedural due process requires: (1) timely written notice of the proceeding; (2) an opportunity to present witnesses, evidence, and arguments; (3) an impartial decisionmaker; and (4) a written, although relatively informal, statement of findings. *Id.*

We conclude that the private roads act satisfies rudimentary due process demands. When an application for a private road is made to the township supervisor, the act requires the supervisor to provide "notice in writing to the owner or occupant of the land over which the road is proposed to be laid out." MCL 229.1; MSA 9.281. Moreover, a jury of six disinterested property owners determines the necessity of the proposed road and appraises the damages of the owner or occupant of the land. MCL 229.2, 229.3; MSA 9.282, 9.283. The business of the jury is to be conducted at a public meeting held in compliance with the Open Meetings Act, MCL 15.261 *et seq.*; MSA 4.1800(11) *et seq.*, and any party in interest may appeal the determination of the jury to the circuit court of the county. MCL 229.11; MSA 9.291. While the act does not explicitly call for the presentation of witnesses and evidence, we conclude that the act implicitly calls for such a procedure by requiring the convening of a jury and the appearance of the property owners to determine the necessity of the road. Finally, the act provides for an informal statement of findings: "If the jury determines that the road applied for is necessary, they shall make and subscribe a certificate of the determination and their appraisal of the damages, and shall deliver the same to the township supervisor . . . ." MCL 229.4; MSA 9.294. The act does not deprive the property owner or occupant of due process.

### III. PLAINTIFFS' PROPOSED USE OF THE REQUESTED ROAD

Defendant argues, and the trial court agreed, that, even if the private roads act is constitutional, plaintiffs' proposed use of the requested road is not permitted under the act. We believe that this question is premature at this time because plaintiffs' necessity for a private road over L & L'S property, if any, has yet to be determined.

### IV. WRIT OF MANDAMUS

Given that we are obligated to declare the constitutionality of the private roads act, the last question to be decided in this appeal is whether the trial court erred in denying plaintiffs' request for mandamus. We review the trial court's decision for an abuse of discretion. *Keaton v Village of Beverly Hills*, 202 Mich App 681, 683; 509 NW2d 544 (1993). Issuance of a writ of mandamus is proper where (1) the plaintiff has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has a clear legal duty to perform it, (3) the act is ministerial, and (4) the plaintiff is without other adequate legal or equitable remedy. *Tuscola Co Abstract Co, Inc v Tuscola Co Register of Deeds*, 206 Mich App 508, 510-511; 522 NW2d 686 (1994).

Plaintiffs argue that defendant has a clear legal duty pursuant to the private roads act to commence jury proceedings to determine the necessity of the road requested by plaintiffs. We agree. Although plaintiffs' right to a private road is not automatic, the act leaves no room for denial of the application. The act requires that the determination of necessity and just compensation be made by a *jury*, leaving only a ministerial role for the township supervisor who is to convene and instruct the jury in the manner requested. Thus, defendant's duties under the act are precisely outlined, and the act leaves nothing to the exercise of his discretion or judgment. Finally, there is no legal or equitable remedy that would achieve the same result. Consequently, the trial court abused its discretion in failing to grant a writ of mandamus.

For the reasons stated, we reverse the judgment of the trial court and remand this case to the trial court for the issuance of a writ of mandamus ordering defendant to convene a jury under the act.[4]

Reversed and remanded. We do not retain jurisdiction.

---

[4] In their claim for relief, plaintiffs request this Court to assign this matter to a different trial judge on remand and to order that defendant be disqualified from conducting the proceedings required by the act. However, we do not believe that such extraordinary relief is warranted.