ROMANO *v*. AUDITOR GENERAL.

1. CONSTITUTIONAL LAW—PURPOSE OF STATE CONSTITUTION—LEGISLA-
TURE.
    The function of a State Constitution is not to legislate in detail,
    but to generally set limits upon the otherwise plenary powers
    of the legislature.

2. SAME—AMENDMENT—STATEMENT OF PURPOSE ON BALLOT—"BY
LAW."
    The term "by law," contained in statement of purpose on ballot
    whereby constitutional amendment was submitted to the elec-
    tors *held,* to be one of clear meaning and not to have misled
    voters by its use (Const. 1908, art. 17, § 3, as amended in
    1941).

3. SAME—AMENDMENT—STATEMENT OF PURPOSE.
    Statement of purpose on ballot whereby constitutional amendment
    was submitted to the voters that a section of the Constitution
    was being "amended to provide for the determination of the
    compensation and expenses of members of the legislature by
    law" was not objectionable as not "a true and impartial state-
    ment of the purpose" of proposal involved (Const. 1908, art.
    17, § 3, as amended in 1941).

4. SAME—CONSTRUCTION.
    In construing the Constitution, it is not to be supposed that a
    single word was inserted therein without the intention of con-
    veying thereby some meaning.

REFERENCES FOR POINTS IN HEADNOTES
[1] 11 Am. Jur., Constitutional Law, §§ 3, 4.
[2, 3] 18 Am. Jur., Elections, § 180.
[4] 11 Am. Jur., Constitutional Law, § 55.
[5] 11 Am. Jur., Constitutional Law, § 54.
[6, 7] 43 Am. Jur., Public Officers, §§ 349, 351, 353, 371.
[6, 7] Constitutional inhibition of increase or decrease in compen-
    sation during term as applicable to nonconstitutional officer.
    31 A.L.R. 1316, supplemented in 70 A.L.R. 1055; 86 A.L.R. 1263;
    106 A.L.R. 779; 144 A.L.R. 685; 166 A.L.R. 842; 170 A.L.R. 1438.
[8] 14 Am. Jur., Costs, §§ 23, 91.

5. Same—Construction of Amendment.

If there is an amendment to the Constitution which qualifies or restricts an earlier provision of the Constitution, the later amendment or provision must control (Const. 1908, art. 5, § 9, as amended in 1948; art. 16, § 3).

6. Same—Amendment—Compensation of Legislators.

Statute enacted in December, 1948, which established compensation of legislators after January 1, 1949, at $2,400 per annum, by legislators and a chief executive elected in 1946 was constitutional, where notwithstanding Constitution had there-. tofore set salaries at $3 per day and also provided that salaries of public officers, except circuit judges, might not be increased or decreased after election or appointment, an amendment to the Constitution, adopted in November,.1948, provided that the compensation and expenses of the legislators should be determined by law and that no change in compensation or expenses' should be effective during term of office for which the legislature making the change was elected, and authorized enactment of statute in question (Const. 1908, art. 5, § 9, as amended in 1948; art. 16, § 3; Act No. 5, Pub. Acts 1948 [2d Ex. Sess.]).

7. Same—Amendment—Expenses of Legislators.

Whether expense allowance to legislators be for reimbursement' for expenses incurred in the performance of required duties, and allowable under express provisions of amendment to the Constitution, or considered as additional salary, it is likewise authorized by such amendment (Const. 1908, art. 5, § 9, as amended in 1948; Act No. 5, Pub. Acts 1948 [2d Ex. Sess.]).

8. Costs—Amendment to Constitution—Construction of Statute.

No costs are allowed in mandamus proceeding involving the validity and construction of an amendment to the Constitution and an act of the legislature (Const. 1908, art. 5, § 9, as amended in 1948; art. 16, § 3; Act No. 5, Pub. Acts 1948 [2d Ex. Sess.]).

Separate petitions by William Romano for writs of mandamus to compel Murl K. Aten, Auditor General, to issue checks for salary and expenses. Phillip C. Kelly, intervened. Submitted January 27, 1949. (Calendar Nos. 44,340, 44,341.) Writs granted February 4, 1949.

*Dee Edwards (George R. Sidwell* and *Dean W. Kelley,* of counsel), for plaintiff.

*Stephen J. Roth,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara* and *G. Douglas Clapperton,* Assistants Attorney General, for defendant.

*Phillip C. Kelly, in pro. per.*

SHARPE, C. J. Plaintiff, William Romano, is a resident of Macomb county, Michigan, and a duly elected member of the house of representatives from the second district in said county. He filed a petition in the Supreme Court for a writ of mandamus commanding defendant Murl K. Aten, auditor general of the State of Michigan, to issue a check for the amount of salary due as provided in Act No. 5, Pub. Acts 1948 (2d Ex. Sess.).* Plaintiff also filed a petition similar in form against the above named defendant for expenses due as provided by the above act.* When the above petitions were filed, the Supreme Court issued orders to show cause. The defendant, acting through the attorney general, filed a consolidated answer to plaintiff's petitions for mandamus in which it is stated that his refusal to issue warrants for salary and expense accounts was due to the fact that the validity of the amendment to article 5, § 9, of the Constitution and the constitutionality of Act No. 5, Pub. Acts 1948 (2d Ex. Sess.), had been drawn in question by one Phillip C. Kelly on grounds asserted in his bill of complaint filed on or about January 12, 1949, in the circuit court of Jackson county against said auditor general.

Said Phillip C. Kelly, having been granted leave to intervene, also filed a consolidated answer to the

---

* $2,400 per annum compensation and $500 per annum expense allowance. 4 Comp. Laws 1948 App. § 4.511 *et seq.*—REPORTER.

petitions filed by plaintiff. In his answer he urges that plaintiff is not entitled to the writ of mandamus for reasons which will be hereafter discussed. He urges that the language printed on the ballot purporting to state the purpose of the proposed amendment did not comply with the mandatory requirement of article 17, § 3 of the Constitution in that language was not "a true and impartial statement of the purpose" of the proposed amendment "in such language as shall create no prejudice for or against such proposal." His particular objection is to the use of the following language on the ballot: "Amended to provide for the determination of the compensation and expenses of members of the legislature *by law.*"

Article 17, § 3 of the Michigan Constitution, as amended in 1941, fixes the requirements for submission to the electors of proposed amendments to the Constitution as follows:

"All proposed amendments to the Constitution and other questions to be submitted to the electors shall be published in full, with any existing provisions of the Constitution which would be altered or abrogated thereby, and a copy thereof shall be posted in each polling place. The purpose of any such proposed amendment or question shall be designated on the ballots for submission to the electors in not more than 100 words, exclusive of caption. Such designation and caption shall be prepared by the secretary of State or by such other authority as shall be hereafter designated by law within 10 days after the filing of any proposal and shall consist of a true and impartial statement of the purpose of the amendment or question in such language as shall create no prejudice for or against such proposal."

The expression "by law" is used in the Michigan Constitution many times. The function of a State Constitution is not to legislate in detail, but to generally set limits upon the otherwise plenary powers

of the legislature.  See *Toy, ex rel. Elliott,* v. *Voelker,* 273 Mich. 205.  In our opinion the term "by law" is one of clear meaning.  It has been so repeatedly used that we may not assume that any voter was misled by the use of such term.  The objection is without merit and we hold that the amendment was properly submitted to the voters on November 2, 1948.

It is also urged that Act No. 5, Pub. Acts 1948 (2d Ex. Sess.), is invalid if applied to members of the 1949–1950 legislature in that it conflicts with article 16, § 3 of the Constitution which provides:

"Neither the legislature nor any municipal authority shall grant or authorize extra compensation to any public officer, agent, employee or contractor after the service has been rendered or the contract entered into.  Salaries of public officers, except circuit judges, shall not be increased, nor shall the salary of any public officer be decreased, after election or appointment."

Prior to the effective date of the 1948 constitutional amendment, compensation of members of the legislature was fixed by article 5, § 9 of the Constitution which provided as follows:

"The compensation of the members of the legislature shall be three dollars per diem during the term for which they are elected, and they shall receive no further compensation than as specified in this section for service when the legislature is convened in extra session.  Members shall be entitled to ten cents per mile and no more for one round trip to each regular and special session of the legislature by the usually traveled route.  Each member shall be entitled to one copy of the laws, journals and documents of the legislature of which he is a member, but shall not receive, at the expense of the State, books, newspapers or perquisites of the office not expressly authorized by this Constitution."

At the November election in 1948 the following amendment to article 5, § 9 was adopted:

"The compensation and expenses of the members of the legislature shall be determined by law: *Provided, That no change in compensation or expenses shall be effective during the term of office for which the legislature making the change was elected.* Each member shall be entitled to 1 copy of the laws, journals 'and documents of the legislature of which he is a member, but shall not receive, at the expense of the State, books, newspapers or perquisites of the office not expressly authorized by the Constitution."

Was the 64th legislature (1947–1948) prohibited by article 16, § 3 from increasing the salaries of the members of the 65th legislature after their election on November 2, 1948, but before the commencement of their terms of office on January 1, 1949? It will be observed that the pertinent language of article 16, § 3, *viz.*: "Salaries of public officers * * * shall not be increased, nor * * * decreased, after election" is broader in its scope and inhibition than that of the pertinent proviso clause in the amendment to article 5, § 9, *viz.*:

"Provided, That no change in compensation or expenses shall be effective during the term of office for which the legislature making the change was elected."

If the former be held now applicable to salaries of members of the legislature, thus prohibiting an increase in their salaries after their election, no purpose is left to be served by the proviso clause in the amendment prohibiting such increase after their terms of office have begun. May we conclude that the people, in amending article 5, § 9, incorporated into the Constitution language which they intended should have no meaning, purpose or effect? We quote with approval from *State, ex rel. Jameson,* v. *Denny,* 118 Ind. 382, 391 (21 N. E. 252, 4 L. R. A. 79).

"It is not to be supposed that a single word was inserted in the organic law of the State without the intention of conveying thereby some meaning."

To give meaning and effect to the quoted proviso clause in the amendment, we must hold that under the provisions of the amendment the salaries of members of the legislature may be increased at any time prior to the commencement of their terms of office and that, to the extent that this may be in conflict with the provisions of article 16, § 3, the amendment to article 5, § 9, controls insofar as the salaries of members of the legislature are concerned. As we said in *Thoman* v. *City of Lansing,* 315 Mich. 566, 578:

"It is a fundamental rule of construction that if there is an amendment to the law, in this case an amendment to the Constitution, and by such amendment an earlier provision of law is qualified or restricted, the later or amendatory provision must control."

The amendment to article 5, § 9 became a part of the Constitution effective December 2, 1948. The act in question was enacted subsequent to the effective date of the amendment and prior to January 1, 1949. It was also enacted by virtue of the power contained in said amendment. It did not violate the restriction therein contained because it was enacted by the legislature and approved by the chief executive who were elected at the November election of 1946. The provision for compensation and expenses did not become effective "during the term of office for which the legislature making the change was elected." After January 1, 1949, it affected solely the compensation of members of succeeding legislatures. Being a proper exercise of the power expressly granted by the amendment, the act, for the

reasons set forth, does not violate article 16, § 3 of the Constitution.

Intervening defendant also urges that the $500 labeled "expense allowance" and authorized by the act in question is an increase in the salaries of members of the legislature. If the expense allowance is to reimburse members for expenses incurred in the performance of required duties it is allowable under the express provisions of the amendment. If the expense allowance is to be considered additional salary, then it is likewise authorized by the amendment to article 5, § 9, above referred to.

In our opinion the act in question is a valid exercise of legislative power. Under the act it is the duty of the auditor general to issue warrants for the payment of compensation and expenses to plaintiff. Plaintiff is entitled to the issuance of a writ of mandamus and, if necessary, the same will issue. No costs are allowed, as the validity and construction of a constitutional amendment and of an act of the legislature are involved.

BUSHNELL, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.