Griffin, J.
Pursuant to MCR 7.215(H), this special panel was convened to resolve the conflict between the prior vacated opinion in this case, reported as McKeigan v Grass Lake Twp Supervisor, 229 Mich App 801 (1998), and Bieker v Suttons Bay Twp Supervisor, 197 Mich App 628; 496 NW2d 398 (1992). In accordance with MCR 7.215(H), the prior McKeigan panel was required to follow the precedent set by Bieker. Were it not for the precedential effect of Bieker, the McKeigan panel would have affirmed the decision of the lower court.
Following an en banc order[1] invoking the conflict resolution procedure, this case was reconsidered by *197 this special panel. After due consideration, we hold that the opening of private roads and temporary highways act (private roads act), MCL 229.1 et seq.; MSA 9.281 el seq., does not violate the Taking Clause of the Michigan Constitution or the due process guarantees of the Michigan and United States Constitutions. We therefore reverse the decision of the lower court and remand for issuance of a writ of mandamus.
i
Plaintiffs seek to develop a landlocked parcel of property into a subdivision. Pursuant to the private roads act, plaintiffs requested defendant township supervisor, the responsible official under the act, to impanel a jury to address the primary issue of necessity and, assuming a favorable outcome, the secondary issue of just compensation to the affected landowner, L & L Development, Ltd. (L & L). However, the township board adopted a motion denying plaintiffs’ request and thereafter defendant declined to proceed. In a letter to plaintiffs, defendant cited uncertainty regarding the constitutionality of the act and advised plaintiffs that even if the act were valid, it was intended to apply only to “one, and only one owner who might find himself with a landlocked parcel of land,” not to plaintiffs’ situation in which the proposed private road on L & L’s land would service a whole subdivision development.
In response to defendant’s position, plaintiffs filed in the circuit court a complaint for a writ of mandamus to compel defendant to commence proceedings in accordance with the provisions of the private roads act. Following a hearing, the lower court denied plaintiffs’ request. Cognizant of the fact that this *198 Court in Bieker, supra, had previously upheld the constitutionality of the private roads act, the circuit court nonetheless found the act to be lacking in “even rudimentary due process” and unconstitutional as violative of the Taking Clause of Const 1963, art 10, § 2. The lower court further concluded that the act, even if constitutional, did not apply to plaintiffs’ circumstances.[2]
Plaintiffs appealed, and the prior panel of this Court, despite its conclusion that the private roads act was facially unconstitutional, reversed only because it was compelled to do so in light of the precedentially binding decision of Bieker, supra. Because the prior McKeigan panel would have held Bieker to be wrongly decided, it declared a conflict pursuant to MCR 7.215(H). The present special panel was convened to resolve this conflict.
n
The private roads act establishes a right and procedure for persons to apply to township supervisors for permission to have private roads laid out across another’s property. MCL 229.1; MSA 9.281. Upon application, the township supervisor shall convene a jury to determine whether the road is necessary. MCL 229.2; MSA 9.282. If the jury determines that the road *199 is necessary, it must appraise the damages of the landowner. MCL 229.4; MSA 9.284. Pursuant to the act, the applicant pays the determined damages and expenses incurred in the proceedings to the supervisor, who in turn reimburses the landowner for the appropriate damages. MCL 229.5; MSA 9.285. The supervisor is then authorized to open the private road for the applicant’s use. MCL 229.5; MSA 9.285 and MCL 229.6; MSA 9.286.
The private roads act was enacted in 1881. 1881 PA 243, ch VIII, § 1 et seq. At that time, the Michigan Constitution provided as follows:
The property of no person shall be taken for public use without just compensation therefor. Private roads may be opened in the manner to be prescribed by law; but in every case the necessity of the road and the amount of all damages to be sustained by the opening thereof, shall be first determined by a jury of freeholders; and such amount, together with the expenses of proceedings, shall be paid by the person or persons to be benefited. [Const 1850, art 18, § 4.]
The Constitution of 1908, art 13, § 3, contained a similar provision, but the Constitution of 1963 contains no comparable language.
The subject of eminent domain is addressed exclusively in Const 1963, art 10, § 2:
Private property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.
Not surprisingly, the above Taking Clause of Const 1963, art 10, § 2 is substantially similar to its federal counterpart. Specifically, the Fifth Amendment of the *200 United States Constitution provides in pertinent part: “ . . . nor shall private property be taken for public use, without just compensation.” We find it noteworthy that defendant does not argue, and the prior McKeigan panel did not address, whether the private roads act is unconstitutional as violative of the Fifth Amendment. It is well established that absent a “compelling reason” found in textual differences or constitutional history, our state constitutional guarantees are construed as affording the same rights guaranteed by the parallel provisions of the United States Constitution. People v Collins, 438 Mich 8; 475 NW2d 684 (1991).
Three prior opinions of this Court have addressed the constitutionality of the public roads act under the Michigan Constitution. The statute was deemed unconstitutional in White Pine Hunting Club v Schalkofski, 65 Mich App 147; 237 NW2d 223 (1975). Then, in a post-November 1, 1990, precedentially binding decision pursuant to MCR 7.215(H)(1), our Court in Bieker upheld the statute as constitutional. Finally, as previously noted, the prior panel in the case at bar opined that the statute violates Const 1963, art 10, § 2, the Michigan constitutional provision against taking private property under the power of eminent domain for any but public purposes.
Our examination of the private roads act from several perspectives, including its underlying rationale and legislative history, leads us to an ultimate resolution in favor of the constitutionality of the statute. We conclude that the Legislature still retains the authority to provide for private roads in cases of necessity and that the private roads act is therefore not violative of the Michigan Constitution.
*201 m
Analysis of the constitutional challenge to the private roads act begins with certain well-established precepts of statutory construction. As explained in Caterpillar, Inc v Dep’t of Treasury, 440 Mich 400, 413; 488 NW2d 182 (1992):
Legislation that is challenged on constitutional grounds is “clothed in a presumption of constitutionality.” Cruz v Chevrolet Grey Iron Div of General Motors Corp, 398 Mich 117, 127; 247 NW2d 764 (1976). A statute is presinned constitutional absent a clear showing to the contrary. Lehnhausen v Lake Shore Auto Parts, 410 US 356; 93 S Ct 1001; 35 L Ed 2d 351 (1973). “[I]t is the duty of the Court to give the presumption of constitutionality to a statute and construe it as constitutional unless the contrary clearly appears.” People v McQuillan, 392 Mich 511, 536; 221 NW2d 569 (1974).
With this presumption of constitutionality in mind, it is essential to first ascertain the underpinnings of the private roads act. In this regard, we agree with the assessments made by both Judge Holbrook, Sr., in his dissenting opinion in White Pine Club, supra at 150-153, and Judge Shepherd in his concurring opinion in Bieker, supra at 633-635, that the private roads act is “a limitation upon the use of private land similar to an easement by necessity,” Bieker, supra at 633 (Shepherd, P.J., concurring). The act was intended to supplement the already existing common-law doctrine of easement by necessity and provide relief to private parties by creating access to landlocked pri *202 vate parties who required it, notwithstanding an absence of privity of contract.[3]
*203 In the context of this statutory purpose, the significance of the deletion of language providing for private roads in cases of necessity from the Constitution of 1963 must be considered. Merely because such reference was eliminated does not mean ipso jure that the act, originally enacted under the Constitution of 1850 as 1881 PA 243, Chapter VIII, § 1 et seq., is now “irreconcilably at odds with our 1963 constitution,” McKeigan, supra at 803, and therefore unconstitutional. On the contrary, as the Bieker majority recognized, supra at 631, “the legislative history suggests the opposite.”
The constitution must be interpreted in light of the original intent of its drafters. People v DeJonge (After Remand), 442 Mich 266, 274; 501 NW2d 127 (1993). The framers’ intent must be understood in conjunction with the common understanding of the constitution held by its ratifiers. Id. A court should place itself in the position of the framers and ascertain what was meant at the time the provision was adopted. Mahaffey v Attorney General, 222 Mich App 325, 334-335; 564 NW2d 104 (1997). The record of the *204 floor debates during the Constitutional Convention of 1961 is relevant and useful:
[T]he most instructive tool for discerning the circumstances surrounding the adoption of the provision is the floor debates in the Constitutional Convention record. However, we have noted previously that consideration of the debates is limited because “[t]hey are individual expressions of concepts as the speakers perceive them (or make an effort to explain them). Although they are sometimes illuminating, affording a sense of direction, they are not decisive as to the intent of the general convention (or of the people) in adopting the measures.” Regents of the Univ of Michigan v Michigan, 395 Mich 52, 59-60; 235 NW2d 1 (1975). Nevertheless, we have said that they are particularly helpful “when we And in the debates a recurring thread of explanation binding together the whole of a constitutional concept.” Id. at 60. [House Speaker v Governor, 443 Mich 560, 580-581; 506 NW2d 190 (1993).]
See also People v Nash, 418 Mich 196, 208-215; 341 NW2d 439 (1983) (Brickley, J.).
Pertinent to the issue at hand is the record of a colloquy at the Constitutional Convention between then Convention Judicial Branch Committee Chairman, and later Chief Judge of the Michigan Court of Appeals, Robert J. Danhof and Delegate H. V. Hatch concerning the deletion of language pertaining to private roads from the proposed constitution:
Mr. Hatch: I notice that this amendment strikes out not only the Stafseth amendment, but also sections c, d and e. My question concerns section c which deals, not with public roads or public property but private roads which may be open and I wonder, if this section is stricken from the constitution if the legislature would have the power to provide for the establishment of private roads.
Mr. Danhof: Mr. Hatch, I point out to you that it states that private roads may be open in a manner prescribed by *205 law. It was left to the legislature. You have a common law right of necessity, as Mr. Hutchinson pointed out to me today before he left. Other states have taken care of this particular problem without having constitutional language thereon. I see no reason why Michigan should have it.
Mr. Hatch-. It would be your understanding that by striking out this provision the legislature would still have the authority to provide that a private individual may establish a private road by taking land from another private individual?
Mr. Danhof: Assuming necessity and that damages are paid; and as to necessity, of course, there would be a big problem to show that he actually needed the way out. I would see nothing that would prohibit that to be done in the exercise of sovereign authority. [2 Official Record, Constitutional Convention 1961, p 2846.]
This discussion and the views of one learned delegate, while certainly not conclusive with regard to the intent of the general convention, provide a tangible “thread of explanation” concerning why the provisions regarding private roads were deleted from the Constitution of 1963: the constitution simply left to the Legislature the power to open private roads in a manner prescribed by law, consistent with the plenary powers of the legislature. “The function of a State Constitution is not to legislate in detail, but to generally set limits upon the otherwise plenary powers of the legislature.” Romano v Auditor General, 323 Mich 533, 536-537; 35 NW2d 701 (1949). In an effort to streamline state government by eliminating unnecessary verbiage contained in the 1908 Constitution, the framers were presumably cognizant of the elementary principle of constitutional law that all powers not exclusively and specifically delegated to the federal government or prohibited to the state are *206 reserved to the people and may be exercised by their representatives in the Legislature:
The United States Constitution grants limited authority to the federal government to exercise only those powers that have been expressly or impliedly delegated to it State constitutions, by contrast, serve as limitations on the otherwise plenary power of state governments. . . . The legislative power under the Michigan Constitution is as broad, comprehensive, absolute, and unlimited as that of England’s Parliament, subject only to the United States Constitution and the restraints and limitations imposed by the people upon such power by the Michigan Constitution. . . .
We conclude that the Legislature can do anything which it is not prohibited from doing by the people through the federal and state constitutions. . . . [Southeastern Michigan Fair Budget Coalition v Killeen, 153 Mich App 370, 380; 395 NW2d 325 (1986) (citations omitted).]
See also Advisory Opinion on Constitutionality of 1976 PA 240, 400 Mich 311, 317-318; 254 NW2d 544 (1977).
Accordingly, the provisions in the Constitutions of 1850 and 1908, which expressly sanctioned the private roads act, in effect added nothing because the Legislature already had the power to do so absent prohibition in the state or federal constitution.
Consequently, Const 1963, art 3, § 7 is controlling: “The common law and the statute laws now in force, not repugnant to this constitution, shall remain in force until they expire by their own limitations, or are changed, amended, or repealed.” Because the deletion from the Constitution of 1963 of the section that dealt with the power of the Legislature to create laws dealing with private roads had no necessary effect on the private roads act, the question remains regarding *207 whether the act is otherwise repugnant to the Constitution of 1963.
In this regard, defendants assert that Const 1963, art 10, § 2 requires that a condemnation proceeding be conducted for a public purpose and that to condemn a private way of necessity does not satisfy this requirement. The prior panel in the instant case, McKeigan, supra at 805, endorsed this argument, focusing on the following language from Poletown Neighborhood Council v Detroit, 410 Mich 616, 632; 304 NW2d 455 (1981):
There is no dispute about the law. All agree that condemnation for a public use or purpose is permitted. All agree that condemnation for a private use or purpose is forbidden. Similarly, condemnation for a private use cannot be authorized whatever its incidental public benefit and condemnation for a public purpose cannot be forbidden whatever the incidental private gain. The heart of this dispute is whether the proposed condemnation is for the primary benefit of the public or the private user. [Emphasis added.]
The prior McKeigan panel concluded that “the primary benefit under the private roads act inures to the landlocked private landowner seeking to open a private road on the property of another, and that any benefit to the public at large is purely incidental and far too attenuated to support a constitutional taking of private property.” McKeigan, supra at 808.
However, as previously indicated, the property rights accorded under the private roads act are akin to a private easementi[4] and provide “a mechanism for *208 a private landowner who is landlocked to obtain an easement across the land of another for the private purposes of the landlocked owner.” Bieker, supra at 634 (Shepherd, P.J., concurring). Unlike an eminent domain condemnation, the private roads act does not displace the general possession by the owner of the land and “has nothing to do with the taking by a public authority of property for a public purpose.” Id at 633. [5] Thus, the private roads act
does not derive from the eminent domain power of the state at all; eminent domain only applies if the property in question is taken for a public use. ... If property is taken for a private use, then it can only be done under some power other than that of eminent domain. [White Pine, supra at 150-151 (Holbrook, Sr., J., dissenting).][6]
*209 Rather, in common with, and more typically evident in, zoning regulations[7] or drainage and utility easements, the authority of the Legislature in passing the private roads act stems from the state’s police power to reasonably regulate property usage:
“All property is held subject to the right of the government to regulate its use in the exercise of the police power so that it shall not be injurious to the rights of the community or so that it may promote its health, morals, safety and welfare. . . . Regulations may result to some extent practically in the taking of property, or the restriction of its use and yet not be deemed confiscatory or unreasonable. . . . Courts will not hold laws, ordinances, or regulations adopted under sanction of law to be unconstitutional unless they are clearly unreasonable, destructive, or confiscatory.” [Austin v Older, 283 Mich 667, 677; 278 NW 727 (1938), quoting State v Hillman, 110 Conn 92, 105-106; 147 A 294 (1929).]
See also Patchak v Lansing Twp, 361 Mich 489, 498; 105 NW2d 406 (1960).
Applying this principle in the present context, the private roads act is neither an unreasonable nor a confiscatory application of police power:
[A]n owner’s right to use his property is subject to reasonable regulation, restriction and control by the state in a legitimate exercise of its police powers. The state has a legitimate interest in protecting the property rights of its citizens. In protecting these rights, it sometimes becomes necessary to weigh and balance competing interests. As a starting point, the state seeks to insure to every property owner the fullest and most complete use and enjoyment of his property as is possible. In order to prevent one party *210 from being totally deprived of the use and enjoyment of his property, it is not unreasonable to require another party to suffer a private road to pass over his property. [White Pine, supra at 153 (Holbrook, Sr., J., dissenting).]
Because the private roads act emanates not from the power of eminent domain but from the police powers of the state, the Taking Clause of Const 1963, art 10, § 2 is neither implicated nor offended by the act. Conversely, the private roads act is not repugnant to the provisions of the Constitution of 1963.
IV
Moreover, contrary to defendant’s contention and the trial court’s conclusion, the private roads act satisfies “rudimentary due process” requirements.[8] US Const, Am V; Const 1963, art 1, § 17; Bundo v Walled Lake, 395 Mich 679, 696; 238 NW2d 154 (1976). Upon application for a private road, the township supervisor must provide “notice in writing to the owner or occupant of the land over which the road is proposed to be laid out.” MCL 229.1; MSA 9.281. A jury of six disinterested property owners initially determines the issue of necessity of the proposed road and, secondarily, the amount of damages incurred by the affected property owner. MCL 229.2; MSA 9.282, MCL 229.3; MSA 9.283. The jury’s business is to be conducted at a public meeting held in compliance with the Open Meetings Act, MCL 15.261 et seq.; MSA 4.1800(11) et seq., and a party in interest may appeal the determination of the jury to the circuit court. MCL 229.11; MSA 9.291. The opportunity to present witnesses, evi *211 dence, and arguments is implicit in the process. Finally, the act provides for an informal statement of findings: “If the jury determines that the road applied for is necessary, they shall make and subscribe a certificate of the determination and their appraisal of the damages, and shall deliver the same to the township supervisor . . . .” MCL 229.4; MSA 9.284. These procedures afford the requisite due process to the affected property owner or occupant.
We therefore uphold the constitutionality of the private roads act. The act, in place for well over one hundred years, is not repugnant to the Constitution of 1963, and its statutory framework does not deprive the landowner or occupant of due process. Bundo, supra.
v
Defendant maintains, and the trial court agreed, that even if the private roads act is constitutional, plaintiffs’ proposed use of the requested road is not permitted under the act. At this juncture in the proceedings, this issue is premature. Plaintiffs’ necessity for a private road over L & L’s property has not yet been established or determined by a jury as provided for under the act.
VI
In light of our determination that the private roads act is constitutional, we must determine whether the trial court erred in denying plaintiffs’ request for mandamus. The trial court’s decision is reviewed for an abuse of discretion. Keaton v Beverly Hills, 202 Mich App 681, 683; 509 NW2d 544 (1993). Issuance of a writ of mandamus is proper where “(1) the plaintiff *212 has a clear legal right to performance of the specific duty sought to be compelled, (2) the defendant has the clear legal duty to perform such act, and (3) the act is ministerial, involving no exercise of discretion or judgment.” Tuscola Co Abstract Co, Inc v Tuscola Co Register of Deeds, 206 Mich App 508, 510-511; 522 NW2d 686 (1994). Mandamus is appropriate only when there is no other remedy, legal or equitable, that might achieve the same result. Id. at 510.
We agree with plaintiffs that defendant has a clear legal duty pursuant to the private roads act to convene a jury and commence proceedings to determine the necessity of the proposed road. Although the right to a private road is not guaranteed, the act does require a jury determination concerning the threshold issue of necessity and just compensation. Defendant’s duties under the act leave nothing to his discretion or judgment; the act mandates that the township supervisor convene and instruct the jury according to the procedure explicitly set forth in the act. There is no legal or equitable remedy that would achieve the same result. We therefore conclude that the trial court abused its discretion in denying plaintiffs’ request for mandamus.
Accordingly, we reverse the judgment of the trial court and remand this case to the trial court for the issuance of a writ of mandamus ordering defendant to convene a jury under the private roads act.
Reversed and remanded. We do not retain jurisdiction.
Holbrook, Jr., Murphy, Jansen, and Whitbeck, JJ., concurred.

 McKeigan v Grass Lake Twp Supervisor, 229 Mich App 801 (1998).

 The trial court held:
[E]ven if it were to be found that the [opening of private roads act] was constitutional and that the supervisor was authorized to act, he would not be authorized to create a road other than for the title-holder of the land seeking the road. Any determination of necessity would solely go to that title-holder and would not go to a subdivision or even to multiple purchasers under the title-holder. To extend the use beyond the title-holder converts it from a private road to a public road.

 It is worthwhile to reiterate, in full, Judge Holbrook, Sr.’s concise explanation of the origins of the act:
In many states the actual organic law provides for certain instances where the private property of one person may be taken and put to the private use of another. In these instances, there is not so much a current “taking” as there is an inherent limitation on the extent of ownership of private property. This was the situation that existed in Michigan prior to the 1963 Constitution. In Michigan, Const 1850, art 18, § 14 and Const 1908, art 13, § 3, both provided for the taking of private property to establish private roads as is contemplated in MCLA 229.1; MSA 9.281. However, all language dealing with the taking of private property to establish private roads was deleted from Constitution 1963, which contains no provision whatever comparable to the language which had appeared in Constitution 1850 and Constitution 1908. It appears that this deletion may have been made under the mistaken belief that the common law “easement by necessity” was sufficient to fill the need which had previously been filled by the constitutional provision coupled with the statute. See 2 Official Record, Constitutional Convention 1961, pp 2602, 2846. The common law easement by necessity, however, cannot fill that gap because it requires privity of estate between the property holders in question. It is actually an easement which arises by implication where a grantor conveys land to a grantee, and where there is no access to the grantee’s land except across the land of the grantor. In such a case, the law would imply that it had been the intent of the parties to convey an easement over the grantor’s land on behalf of the grantee. In saying that the easement in such a case was actually the implied intent of the parties, the issue of whether or not there is actually a “taking” by the grantee of an easement over the grantor’s property is avoided. If an easement is what the parties originally intended, then all the court is really doing is enforcing the original intent of the parties. While it is sometimes said that the rule would not apply if a contrary intent can be shown, it is probably closer to the truth to say that such intent is actually irrebuttably presumed. Douglas v Jordan, 232 Mich 283; 205 NW 52 (1925). And, of course, if such intent is irrebuttably presumed, then the enforcement of an easement in favor of a grantee in such a case would be no different from the actual granting of a private road under the statute in question insofar as the owner of the subservient estate is concerned. In either case, his property has been taken for the use of another private person without the necessity of proving his own consent to *203 the taking. The only practical difference then between the common law easement by necessity and the private road contemplated by the statute in question is that the common law would require privity of estate. Under either theory, the property of one individual may, without his actual consent, be taken for the use of another private individual.
Under the common law, an easement by necessity ended when the necessity ended. The prime example of this was when the holder of the easement acquired the subservient estate. The statute in question requires a finding of necessity before a private road will be granted. The right of an individual to have a private road declared is based upon absolute necessity, and upon the necessity ceasing the right to use the road would end. [White Pine, supra at 151-152 (emphasis added).]

 An easement, by nature, is
“a right which one proprietor has to some profit, benefit or lawful use, out of, or over, the estate of another proprietor. ... It does not displace the general possession by the owner of the land, but the *208 person entitled to the easement has a qualified possession only, so far as may be needful for its enjoyment.” [McClintic-Marshall Co v Ford Motor Co, 254 Mich 305, 317; 236 NW 792 (1931), quoting Morrill v Mackman, 24 Mich 279, 284; 9 Am Rep 124 (1872) (emphasis added).]

 While it contains broad language and dicta, the Poletown decision is inapposite to the present circumstances. In Poletown, a public authority, the Detroit Economic Development Corporation, sought to invoke the power of eminent domain to condemn land in Poletown for the purpose of conveying the land to General Motors Corporation for the construction of new assembly plants. A group of private individuals challenged the condemnation as a taking without a public purpose. Poletown, supra at 628. The Supreme Court held that there was a public purpose-the creation of an industrial site that would be used to alleviate and prevent conditions of unemployment and fiscal distress-that justified the exercise of eminent domain power by the public authority. Id. at 634. The concept expressed in Poletown has no bearing on the present facts.

 In this regard, we reject the reasoning of the Bieker majority, which, ironically, relied on Poletown, supra, in finding the act to be constitutional. The Bieker majority concluded that the act is subject to the requirement found in Const 1963, art 10, § 2 that the taking of private property be for a public purpose but that “a public use is embodied in the statute itself . . . .” Bieker, supra at 632.

 See Paragon Properties Co v Novi, 452 Mich 568, 573; 550 NW2d 772 (1996) (“[t]he zoning of land is a reasonable exercise of government police power”).

 With regard to the remaining issues, we have no disagreement with the prior McKeigan panel. We have adopted and incorporated Judge (now Justice) Young’s analysis with regard to these questions.