**Michigan Supreme Court**
**Lansing, Michigan 48909**

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

# Opinion

**FILED MAY 15, 2001**

GLEN TOLKSDORF and MARINDA TOLKSDORF,
DAVID PENDELL, RICHARD PENDELL and
KAREN PENDELL, JOHN LUCZAK and
MARCY LUCZAK, RICHARD DEISLER and
PATRICIA DEISLER, DENNIS HILL and
NANCY HILL, TERRENCE TORMOEN and
LYNNE TORMOEN,

    Plaintiffs-Appellees,

v                               No. 115032

JOHN T. GRIFFITH, JANE GRIFFITH,
NORTH WOODS CONSERVANCY,
JOHN T. FOLEY, PAUL MICHAEL FOLEY, II,
and MICHELLE FOLEY SHEPPARD,

    Defendants-Appellants,

GERALD DAHLGREN,

    Defendant.
_____

BEFORE THE ENTIRE BENCH (except MARKMAN, J.).

KELLY, J.

    This case involves the constitutionality of the Opening
of Private Roads and Temporary Highways Act (the private roads

act), MCL 229.1 *et seq.*; MSA 9.281 *et seq.* The key issue is whether the act provides for an unconstitutional taking under art 10, § 2 of the Michigan Constitution of 1963. We hold that it does because the act authorizes a taking and the taking primarily benefits a private rather than a public purpose. For that reason, we strike down the act as unconstitutional.

## I. The History of the Private Roads Act

Both the Michigan and federal constitutions prohibit the taking of private property for public use without just compensation.[1] US Constitution, Am V; Const 1963, art 10, § 2. The Taking Clause of the state constitution is substantially similar to that of the federal constitution. *City of Kentwood v Sommerdyke Estate,* 458 Mich 642, 656; 581 NW2d 670 (1998). Const 1963, art 10, § 2 provides:

> [P]rivate property shall not be taken for public use without just compensation therefor being first made or secured in a manner prescribed by law. Compensation shall be determined in proceedings in a court of record.

The private roads act arose from language at art 18, § 14 of the Michigan Constitution of 1850. This predecessor of art 10, § 2 of the 1963 Constitution provided:

---

[1]The Fifth Amendment's Taking Clause is applied to the states through the Fourteenth Amendment. *Penn Central Transportation Co v New York City,* 438 US 104, 122; 98 S Ct 2646; 57 L Ed 2d 631 (1978).

2

The property of no person shall be taken for public use without just compensation therefor. Private roads may be opened in the manner to be prescribed by law; but in every case the necessity of the road and the amount of all damages to be sustained by the opening thereof, shall be first determined by a jury of freeholders; and such amount, together with the expenses of the proceedings, shall be paid by the person or persons to be benefitted.

A similar provision is found in the Michigan Constitution of 1908, art 13, §§ 1 and 3. However, the current Michigan constitution eliminated the express reference to private roads.

More than eighty years before that change, the Michigan Legislature enacted the private roads act. It allows a private landowner to petition the township supervisor to open a private road across another landowner's property. MCL 229.1; MSA 9.281. A jury consisting of property owners determines whether the road is necessary. MCL 229.2; MSA 9.282. If a private road is authorized, the jury then sets a dollar amount that the petitioner must pay to compensate the owner of the land where the road is built. MCL 229.3; MSA 9.283, MCL 229.5; MSA 9.285.

## II. The Facts and Procedural History of the Present Case

Plaintiffs own section 12, township 57 north, range 33 west, in Allouez Township, Keweenaw County, Michigan. Defendants own a neighboring parcel, section 13.

3

Section 12 is landlocked, although it can be accessed by foot trails. Plaintiff Glen Tolksdorf acquired section 12 in March of 1992, intending to develop the property and sell it as lots. He attempted without success to acquire an easement from surrounding property owners in order to achieve a paved vehicular connection from his property to a roadway. Those who purchased lots from Tolksdorf are also plaintiffs in this case. In addition to seeking a road across section 13, they seek an easement for utility lines.

In the past, defendants have allowed members of the general public to use the trails on section 13 to access section 12 for recreational purposes. They have also permitted loggers to cross their property. However, they object to the installation of a paved road and utility lines.

Plaintiffs sued, naming as defendants the section 13 property owners as well as Gerald Dahlgren, Allouez Township supervisor, who had refused to commence proceedings to open a private road. In their complaint, plaintiffs sought a determination that they had acquired an easement by prescription.[2] The trial court ruled against them. It also

---

[2]"Prescriptive easements arise where a person uses, but does not possess, the land of another for a particular purpose without permission for 15 years." 1 Cameron, Michigan Real Property Law, § 6.11, p 204 (2d ed). They are "based upon the legal fiction of a lost grant." *Id.*, citing *Dyer v Thurston*,
(continued...)

4

denied their request for a writ of mandamus that would compel Dahlgren to proceed under the private roads act.

The Court of Appeals affirmed the trial court's decision concerning the easement issue. However, it found error in the refusal to issue a writ. It remanded the case, with instructions to direct Dahlgren to commence proceedings to open a private road pursuant to the act.

We granted leave limited to the question whether the private roads act is constitutional. 461 Mich 1014 (2000). The issue whether plaintiffs acquired an easement in section 13 is not before us.

III. The Constitutionality of the Private Roads Act

Review of the constitutionality of a statute presents a question of law that is reviewed de novo. *Blank v Dep't of Corrections*, 462 Mich 103, 112; 611 NW2d 530 (2000). A statute is presumed constitutional, unless its unconstitutionality is readily apparent. *Id.*

Over the years, the Court of Appeals has struggled with whether the private roads act is constitutional. In 1975, the first panel to consider the question found the act "repugnant to Const 1963, art 10, § 2." *White Pine Hunting Club v Schalfoski*, 65 Mich App 147, 149; 237 NW2d 223 (1975).

---

[2](...continued)
32 Mich App 341, 343; 188 NW2d 633 (1971).

Specifically, *White Pine Hunting Club* found no public purpose justifying the taking authorized by the act.

Seventeen years later, another panel declined to follow *White Pine Hunting Club*, and found the act constitutional. *Bieker v Suttons Bay Twp Supervisor*, 197 Mich App 628, 630; 496 NW2d 398 (1992). *Bieker* said that a public use was embodied in the statute. *Id.* at 632. Specifically, the Court expressed concern about the depressed value of landlocked property and concluded that "providing access to land is beneficial to the community as a whole." *Id.*

Judge Shepherd concurred, but wrote separately to express his view that the private roads act had "nothing to do with the taking by a public authority of property for a public purpose." *Id.* at 633. Instead, he opined that the act authorized a permissible limitation on the private use of land.

The next panel to consider the act's constitutionality disagreed with *Bieker*, but found itself constrained to follow it. *McKeighan v Grass Lake Twp Supervisor (McKeighan I)*, Docket No 195437, unpublished opinion per curiam, issued May 8, 1998, vacated May 20, 1998, printed at 229 Mich App 801; 587 NW2d 505 (1998). A special panel was convened to resolve the conflict between *McKeighan I* and *Bieker. McKeighan v Grass Lake Twp Supervisor*, 234 Mich App 194, 196; 593 NW2d 605

(1999)*(McKeighan II)*.[3]

*McKeighan II* upheld the constitutionality of the act. *Id.* at 209. It determined that the act had its origins in the state's power to reasonably regulate property usage, rather than its power of eminent domain. *Id.* The Court also compared the limitation it imposed on property to a common-law easement by necessity. *Id.* at 201-202. *McKeighan II* concluded that "the Taking Clause of Const 1963, art 10, § 2 is neither implicated nor offended by the act." *Id.* at 210.

One member of the panel dissented. He felt that the analogy to a common-law easement by necessity was inappropriate. *Id.* at 215. He agreed that the private roads act did not emanate from the state's power of eminent domain. The land was not taken for public use, but for private use. *Id.,* citing 1 Nichols, Eminent Domain (3d ed), § 1.11, p 1-7. However, he disagreed with the majority's conclusion that the act did not implicate the Taking Clause. *Id.* at 215-216. He would have found the private roads act repugnant to Const 1963, art 10, § 2. *Id.* at 217.[4]

---

[3]An appeal to this Court was filed in *McKeighan II*, but was dismissed when the plaintiffs sold the property in question. *McKeighan v Grass Lake Twp Supervisor*, 605 NW2d 319 (1999). The order dismissing the case noted that this Court would have granted the application for leave to appeal. *Id.*

[4]Although the Court of Appeals followed *McKeighan II* as
(continued...)

7

A state may not deprive any person of life, liberty, or property without due process. US Const, Am XIV. The state's power to take private property is called its power of eminent domain or condemnation. 2 Cameron, Michigan Real Property Law, § 24.1, p 1102 (2d ed).

It is without question that the private roads act authorizes a taking. See *Nollan v California Coastal Comm*, 483 US 825; 107 *S* Ct 3141; 97 L Ed 2d 677 (1987). In *Nollan*, the plaintiffs owned beachfront property in California. They wished to tear down an existing home and replace it with a larger one. *Id.* at 828. Because the property was on the seacoast, a California statute required the Nollans first to obtain a permit from the Coastal Commission. *Id.*

The commission agreed to grant the permit only if the Nollans allowed the public an easement over their property, thereby facilitating public access to a nearby public beach. *Id.* In analyzing whether the terms of the permit constituted a taking under the Fifth and Fourteenth Amendments of the federal constitution, the United States Supreme Court held:

> In *Loretto* [*v Teleprompter Manhattan CATV Corp,* 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982)] we observed that where governmental action

---

[4](...continued)
required by MCR 7.215(I), Judge Markman and Judge O'Connell both indicated that they agreed with the vacated *McKeighan* decision and the dissent in *McKeighan II*.

8

results in "a permanent physical occupation" of the property, by the government itself or others, see 458 US, at 432-433, n 9, "our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner," *id.* at 434-435. We think a "permanent physical occupation" has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may be continuously traversed, even though no particular individual is permitted to station himself permanently upon the premises. [*Id.* at 831-832.]

Similarly, the private roads act gives individuals "a permanent and continuous right to pass to and fro" over another's property. It thus allows a "permanent physical occupation" of private property by means of government action. This is a taking. *Nollan, supra* at 832.[5]

The next question is whether the taking authorized by the private roads act is constitutionally permissible. Private property may not be taken for a private purpose. *Shizas v Detroit*, 333 Mich 44, 50; 52 NW2d 589 (1952). Plaintiffs argue that the takings that the private roads act enables are those for a public not a private purpose. They point to the Court of Appeals decision in *McKeighan II, supra,* for support of their position.

---

[5]A taking occurs even if there is a benefit to the public. *Nollan, supra* at 831. Whether the government may take the property will then depend on the interest served.

9

Whatever public interest the act serves, plaintiffs are primarily benefitted by it. In *Poletown Neighborhood Council, Inc v Detroit*,[6] this Court set forth the analysis used when a taking benefits both private entities and the public:

> The power of eminent domain is restricted to furthering public uses and purposes and is not to be exercised without substantial proof that the public is primarily to be benefitted. Where, as here, the condemnation power is exercised in a way that benefits specific and identifiable private interests, a court inspects with heightened scrutiny the claim that the public interest is the predominant interest being advanced. Such public benefit cannot be speculative or marginal but must be clear and significant if it is to be within the legitimate purpose as stated by the Legislature. [*Id.* at 634-635.]

Hence, the question becomes whether the public interest advanced here, access to landlocked property, is the predominant interest advanced. We find that it is not.

We are unconvinced that the public is the predominant interest served by the private roads act. The very language of the act reveals that it is concerned with private roads having, presumably, a private not a public benefit. Also, the act does not require the state to compensate the landowner, but, rather, the private person petitioning for the private road. MCL 229.3; MSA 9.283 and MCL 229.5; MSA 9.285. The private roads act uses the state's power of eminent domain to

---

[6]410 Mich 616; 304 NW2d 455 (1981).

10

convey an interest in land from one private person to another.

The Court of Appeals has opined that the private roads act merely supplements the already existing law of private easements. *McKeighan II, supra* at 208-209. However, the *McKeighan II* dissent accurately remarked that there is a difference between easements by necessity and the interest created by operation of the private roads act:

> As noted in Judge Holbrook, Sr.'s dissent in *White Pine Hunting Club*[*supra* at 151-152], the analytical basis for enforcing a common-law easement by necessity is the assumption that the parties who have originally created the landlocked parcel intended that the owner of the landlocked parcel have access to the land over the other's parcel. Accordingly, with a common-law easement by necessity, "all the court is really doing is enforcing the original intent of the parties." *Id.* at 152. [*McKeighan II, supra* at 214-215 (Talbot, P.J., dissenting).]

An implied easement also arises only when the land on which the easement is sought was once part of the same parcel that is now landlocked. 1 Cameron, Michigan Real Property Law, § 6.9, p 199 (2d ed). Missing from the private roads act is some conduct by the party whose land is burdened or his predecessor, indicating assent to the burden imposed.

The *McKeighan II* dissent took the position that the private roads act does not involve the state's power of eminent domain. We note that the act does not impose a limitation on land use that benefits the community as a whole.

11

Instead, it gives one party an interest in land the party could not otherwise obtain. By eliminating the landowner's right to exclude others from his property, the act conveys an interest in private property from one private owner to another. The taking authorized by the act appears merely to be an attempt by a private entity to use the state's powers "to acquire what it could not get through arm's length negotiations with defendants." *Lansing v Edward Rose Realty*, 192 Mich App 551, 558; 481 NW2d 795 (1992), aff'd 442 Mich 626; 502 NW2d 638 (1993) (analyzing a proposed taking under a city ordinance governing cable television service). The result more closely resembles a taking of private property than a limitation on it.[7]

Consequently, we agree with the Court of Appeals panel in *McKeighan I, supra* at 808. "[T]he primary benefit under the private roads act inures to the landlocked private landowner seeking to open a private road on the property of another . . . . [A]ny benefit to the public at large is purely incidental and far too attenuated to support a constitutional

---

[7]Even if we agreed with plaintiffs that the private roads act merely authorizes a land use restriction, not a taking, the act would have to withstand constitutional scrutiny. "[A] land use restriction may constitute a 'taking' if not reasonably necessary to the effectuation of a substantial government purpose . . . ." *Penn Central Transportation Co,* n 1 *supra* at 122.

12

taking of private property." We find that the private roads act is unconstitutional, because it authorizes a taking of private property for a predominantly private purpose.

We reverse the Court of Appeals decision in this case and reinstate the ruling of the trial court for defendants. *Bieker* and *McKeighan II* are overruled.

CORRIGAN, C.J., and CAVANAGH, WEAVER, TAYLOR, and YOUNG, JJ., concurred with KELLY, J.

MARKMAN, J., took no part in the decision of this case.