Judge Shepherd
concurred, but wrote separately to express his view that the private roads act had “noth *6 ing to do with the taking by a public authority of property for a public purpose.” Id. at 633. Instead, he opined that the act authorized a permissible limitation on the private use of land.
The next panel to consider the act’s constitutionality disagreed with Bieker, but found itself constrained to follow it. McKeighan v Grass Lake Twp Supervisor (McKeighan I), Docket No. 195437, unpublished opinion per curiam, issued May 8, 1998, vacated May 20, 1998, printed at 229 Mich App 801; 587 NW2d 505 (1998). A special panel was convened to resolve the conflict between McKeighan I and Bieker. McKei-ghan v Grass Lake Twp Supervisor, 234 Mich App 194, 196; 593 NW2d 605 (1999)(McKeighan II).[3]
McKeighan II upheld the constitutionality of the act. Id. at 209. It determined that the act had its origins in the state’s power to reasonably regulate property usage, rather than its power of eminent domain. Id. The Court also compared the limitation it imposed on property to a common-law easement by necessity. Id. at 201-202. McKeighan II concluded that “the Taking Clause of Const 1963, art 10, § 2 is neither implicated nor offended by the act.” Id. at 210.
One member of the panel dissented. He felt that the analogy to a common-law easement by necessity was inappropriate. Id. at 215. He agreed that the private roads act did not emanate from the state’s power of eminent domain. The land was not taken for public use, but for private use. Id., citing 1 Nichols, Eminent *7 Domain (3d ed), § 1.11, p 1-7. However, he disagreed with the majority’s conclusion that the act did not implicate the Taking Clause. Id. at 215-216. He would have found the private roads act repugnant to Const 1963, art 10, § 2. Id. at 217.[4]
A state may not deprive any person of life, liberty, or property without due process. US Const, Am XIV. The state’s power to take private property is called its power of eminent domain or condemnation. 2 Cameron, Michigan Real Property Law (2d ed), § 24.1, p 1102 .
It is without question that the private roads act authorizes a taking. See Nollan v California Coastal Comm, 483 US 825; 107 S Ct 3141; 97 L Ed 2d 677 (1987). In Nollan, the plaintiffs owned beachfront property in California. They wished to tear down an existing home and replace it with a larger one. Id. at 828. Because the property was on the seacoast, a California statute required the Nollans first to obtain a permit from the Coastal Commission. Id.
The commission agreed to grant the permit only if the Nollans allowed the public an easement over their property, thereby facilitating public access to a nearby public beach. Id. In analyzing whether the terms of the permit constituted a taking under the Fifth and Fourteenth Amendments of the federal constitution, the United States Supreme Court held:
In Loretto [v Teleprompter Manhattan CATV Corp, 458 US 419; 102 S Ct 3164; 73 L Ed 2d 868 (1982)] we observed that where governmental action results in “a permanent *8 physical occupation” of the property, by the government itself or others, see 458 US, at 432-433, n 9, “our cases uniformly have found a taking to the extent of the occupation, without regard to whether the action achieves an important public benefit or has only minimal economic impact on the owner,” id. at 434-435. We think a “permanent physical occupation” has occurred, for purposes of that rule, where individuals are given a permanent and continuous right to pass to and fro, so that the real property may be continuously traversed, even though no particular individual is permitted to station himself permanently upon the premises. [Id. at 83Í-832.]
Similarly, the private roads act gives individuals “a permanent and continuous right to pass to and fro” over another’s property. It thus allows a “permanent physical occupation” of private property by means of government action. This is a taking. Nollan, supra at 832.[5]
The next question is whether the taking authorized by the private roads act is constitutionally permissible. Private property may not be taken for a private purpose. Shizas v Detroit, 333 Mich 44, 50; 52 NW2d 589 (1952). Plaintiffs argue that the takings that the private roads act enables are those for a public not a private purpose. They point to the Court of Appeals decision in McKeighan II, supra, for support of their position.
Whatever public interest the act serves, plaintiffs are primarily benefited by it. In Poletown Neighborhood Council, Inc v Detroit,[6] this Court set forth the *9 analysis used when a taking benefits both private entities and the public:
The power of eminent domain is restricted to furthering public uses and purposes and is not to be exercised without substantial proof that the public is primarily to be benefit-ted. Where, as here, the condemnation power is exercised in a way that benefits specific and identifiable private interests, a court inspects with heightened scrutiny the claim that the public interest is the predominant interest being advanced. Such public benefit cannot be speculative or marginal but must be clear and significant if it is to be within the legitimate purpose as stated by the Legislature. [Id. at 634-635.]
Hence, the question becomes whether the public interest advanced here, access to landlocked property, is the predominant interest advanced. We find that it is not.
We are unconvinced that the public is the predominant interest served by the private roads act. The very language of the act reveals that it is concerned with private roads having, presumably, a private not a public benefit. Also, the act does not require the state to compensate the landowner, but, rather, the private person petitioning for the private road. MCL 229.3 and 229.5. The private roads act uses the state’s power of eminent domain to convey an interest in land from one private person to another.
The Court of Appeals has opined that the private roads act merely supplements the already existing law of private easements. McKeighan II, supra at 208-209. However, the McKeighan II dissent accurately remarked that there is a difference between easements by necessity and the interest created by operation of the private roads act:
*10 As noted in Judge Holbrook, Sr.’s dissent in White Pine Hunting Club[supra at 151-152], the analytical basis for enforcing a common-law easement by necessity is the assumption that the parties who have originally created the landlocked parcel intended that the owner of the landlocked parcel have access to the land over the other’s parcel. Accordingly, with a common-law easement by necessity, “all the court is really doing is enforcing the original intent of the parties.” Id. at 152. [McKeighan II, supra at 214-215 (Talbot, P.J., dissenting).]
An implied easement also arises only when the land on which the easement is sought was once part of the same parcel that is now landlocked. 1 Cameron, Michigan Real Property Law (2d ed), § 6.9, p 199. Missing from the private roads act is some conduct by the party whose land is burdened or his predecessor, indicating assent to the burden imposed.
The McKeighan II dissent took the position that the private roads act does not involve the state’s power of eminent domain. We note that the act does not impose a limitation on land use that benefits the community as a whole. Instead, it gives one party an interest in land the party could not otherwise obtain. By eliminating the landowner’s right to exclude others from his property, the act conveys an interest in private property from one private owner to another. The taking authorized by the act appears merely to be an attempt by a private entity to use the state’s powers “to acquire what it could not get through arm’s length negotiations with defendants.” Lansing v Edward Rose Realty, 192 Mich App 551, 558; 481 NW2d 795 (1992), aff’d 442 Mich 626; 502 NW2d 638 (1993) (analyzing a proposed taking under a city ordinance governing cable television service). The result more *11 closely resembles a taking of private property than a limitation on it.[7]
Consequently, we agree with the Court of Appeals panel in McKeighan I, supra at 808. “[T]he primary benefit under the private roads act inures to the landlocked private landowner seeking to open a private road on the property of another .... [A]ny benefit to the public at large is purely incidental and far too attenuated to support a constitutional taking of private property.” We find that the private roads act is unconstitutional, because it authorizes a taking of private property for a predominantly private purpose.
We reverse the Court of Appeals decision in this case and reinstate the ruling of the trial court for defendants. Bieker and McKeighan II are overruled.
Corrigan, C.J., and Cavanagh, Weaver, Taylor, and Young, JJ., concurred with Kelly, J.
Markman, J., took no part in the decision of this case.

 An appeal to this Court was filed in McKeighan II, but was dismissed when the plaintiffs sold the property in question. McKeighan v Grass Lake Twp Supervisor, 605 NW2d 319 (1999). The order dismissing the case noted that this Court would have granted the application for leave to appeal. Id.

 Although the Court of Appeals followed McKeighan II as required by MCR 7.215(1), Judge Markman and Judge O’Connell both indicated that they agreed with the vacated McKeighan decision and the dissent in McKeighan II.

 A taking occurs even if there is a benefit to the public. Nollan, supra at 831. Whether the government may take the property will then depend on the interest served.

 410 Mich 616; 304 NW2d 455 (1981).

 Even if we agreed with plaintiffs that the private roads act merely authorizes a land use restriction, not a taking, the act would have to withstand constitutional scrutiny. “[A] land use restriction may constitute a ‘taking’ if not reasonably necessary to the effectuation of a substantial government purpose . . . .” Penn Central Transportation Co, n 1 supra at 122.